147 So.2d 12 (1962)
Harold LAZOW, Appellant,
v.
Eleanore LAZOW, Sometimes Known As Eleanore Granoff and Roy Edward Lazow, Her Son, Appellees.
No. 62-117.
District Court of Appeal of Florida. Third District.
December 4, 1962.
Maurice Fixel, Hollywood, for appellant.
Morris Berick, Miami Beach, for appellees.
Before PEARSON, TILLMAN, C.J., and HORTON and BARKDULL, JJ.
PEARSON, TILLMAN, Chief Judge.
Harold Lazow, father of Roy Edward Lazow, appeals that portion of a decree changing his son's name to Granoff, his former wife's maiden name. We reverse upon the ground that the chancellor wrongfully denied the father a reasonable opportunity to be heard.
*13 Eleanore and Harold Lazow were divorced in 1950. The only child of the marriage, Roy, was born in 1949. The Circuit Court of Dade County granted custody of Roy to the mother, Eleanore. The appellant-father lived in Florida until 1957, at which time he moved to New York. After leaving Florida, he kept in touch with his son and regularly contributed to his support. On December 14, 1961, a petition was filed praying that the court change the surnames of Eleanore Lazow and Roy Edward Lazow to Granoff, the mother's maiden name. The only allegations in the petition material to changing the name of the child are that the mother had been granted permanent custody of Roy and that he was over the age of 12 years.
As required by § 69.02(6), Fla. Stat., F.S.A.,[1] notice of the petition was forwarded by mail to the father on December 15, 1961, directing him to file an answer by January 15, 1962. All other necessary steps were taken to perfect constructive service of process. On January 2, 1962, an attorney in New York, acting for the father, wrote to the clerk of the circuit court inquiring as to whether an affidavit of respondent would be acceptable in answer to the petition. This letter stated in part: "Mr. Lazow vigorously objects to the change of name sought for his infant son, and intends, in good faith, to resist such application." By return letter, the clerk informed the attorney that the judge had advised that an affidavit or verified answer might be filed, and on January 11th an affidavit was filed.[2]
On January 11, 1962, petitioner's attorney mailed to respondent a "notice of trial" setting the case for disposition on January 17th. On January 15th respondent's New York attorney wrote to the clerk requesting an adjournment to permit respondent to arrange for local counsel and also for time for respondent to secure a leave of absence from his employment. At the time set for the trial, the court *14 denied the request for adjournment and entered a decree changing both names after finding that the equities were with the petitioners. Thereafter the father filed a petition for rehearing and appeared personally, but the petition was denied. As mentioned, the father appeals only that portion of the decree which changed his son's name.
To change the name of a minor son so that he no longer bears his father's name is a serious matter, and such action may be taken only where the record affirmatively shows that such change is required for the welfare of the minor. Society has a strong interest in the preservation of the parental relationship, Application of Shipley, 26 Misc.2d 204, 205 N.Y.S.2d 581 (1960); Mark v. Kahn, 333 Mass. 517, 131 N.E.2d 758, 53 A.L.R.2d 908, and a possible adverse effect on the relationship between father and child is a valid ground for refusing to change the name of a 12 year old child. At this tender age a child is not capable of making an intelligent choice in the matter of his name. See Mark v. Kahn, supra; In re Epstein, 121 Misc. 151, 200 N.Y.S. 897 (1923).
We hold that the chancellor abused the discretion reposed in him when he denied the father's request for a postponement of hearing in that six days' notice of trial to the father in New York was not sufficient under the circumstances of this case. See generally Albert v. Miami Transit Co., 154 Fla. 186, 17 So.2d 89, 90; and Ellard v. Godwin, Fla. 1955, 77 So.2d 617.
The decree is affirmed insofar as it changes the name of the divorced wife and is reversed as to all provisions applying to the minor child, Roy Edward Lazow, with directions to grant the father's petition for rehearing and for further proceedings in accordance with the views expressed herein.
Affirmed in part and reversed in part and remanded.
NOTES
[1] "(6) Where only one (1) parent petitions for a change in the name of a minor child, notice of such petition shall be served on the other parent and proof of such service shall be filed in the cause."
[2] The affidavit set forth in part:

"The divorce decree also provides that I may have my son with me for a period of two months during the summer. I strongly desired to exercise that right in the summer of 1960. I am now remarried and have a very comfortable home. I telephoned to my son and suggested that he spend the summer of 1960 with me. I offered to send him money for transportation. He did not come for a reason too obvious. His mother, no doubt, refused to permit him to do so.
"I telephoned and spoke to my son in December, 1961, at which time I inquired about his coming confirmation. His Bar Mitzvah is scheduled for his thirteenth birthday in June, 1962. He informed me he is doing very well with his Hebrew lessons in preparation for the happy event. I again informed him that I would be delighted to have him spend the summer of 1962 with me.
"I am a war veteran and receive a disability payment from the United States Government of approximately $160.00 per month. Out of this amount, the Veterans Administration has always remitted, and still remits for the support of my boy about $40.00 per month. This is considerably more than the support provision contained in the divorce decree.
"In 1951, I gave about 15 or 20 United States Savings Bonds, each in the face value of $100.00, to the child's mother, in trust for the boy. From time to time since then, and as recently as June, 1961, I sent him money and gifts. In 1960, I gave him a 17 jewel wrist watch as a birthday gift. I support my boy and will continue to do so.
"I love my son dearly and strongly desire that he bear my name, his birth name. What has possessed his mother or what motivates her to make this strange and unusual application for a little boy of 12 years, is beyond my reasonable comprehension. His school records reflect the name of Lazow, the only name by which he has been known and is still known. To suddenly change his name to suit a whim of his mother, would confuse the child and cause him embarrassment and humiliation, in school and among his friends. It cannot and will not promote his best interests. To change his name would be a gross injustice to me."