(No. 58975.—

*In re* MARRIAGE OF HERMAN WAYNE PRESSON, Appellant, and PAMELA S. PRESSON, n/k/a PAMELA S. KELLEY, Appellee.

*Opinion filed May 25, 1984.*

304

Fred W. Potter, of Princeton, for appellant.

Paul H. Vallandigham, of Winkelmann & Winkelmann, of Urbana, for appellees.

JUSTICE SIMON delivered the opinion of the court:

The question presented here is: Can the divorced father of a seven-year-old boy prevent the child from being called by the surname of his mother's new husband until the child is old enough to legally change his own name?

Herman Wayne Presson (Wayne) and Pamela S. Presson (Pamela) were divorced in 1979. At that time their son, Gregory Wayne Presson (Greg or Gregory), was five years old. In November 1980, less than five weeks after Pamela's marriage to Frederick A. Kelley (Kelley), Wayne received the following letter from Kelley:

"Wayne Presson:

Pamela and I have determined that it is in Gregs best interest to change his name from Gregory Wayne Presson to Gregory Wayne Kelley. Be advised that in future correspondence, legal matters, eet. [*sic*] Gregs name is now legally Gregory Wayne Kelley.

Any questions, legal, eet. [*sic*] as per this matter may be addressed to either myself or Attorney of law [names and addresses omitted]."

Shortly thereafter Wayne initiated a petition in the circuit court of Saline County for modification of the judgment of dissolution of marriage praying that Pamela and Kelley be permanently enjoined from legally changing Gregory's name and from using any name other than Gregory Wayne Presson in the school records or in any other context. Wayne, Pamela and Gregory testified at a hearing. Because Pamela agreed that she would not attempt to legally change Gregory's name, the trial judge denied the injunction, but at the same time ordered that "the child shall use the name Gregory Wayne Presson until he is old enough to change it legally himself, and both parties and the child are hereby ordered to use no other name for the child until further order of the court." Pamela appealed, and the appellate court reversed (116 Ill. App. 3d 458), holding that the trial court lacked both personal and subject matter jurisdiction and that the trial court abused its discretion when it "virtually ignored" Gregory's testimony regarding the use of both names. Wayne's petition for leave to appeal to this court was allowed (87 Ill. 2d R. 315).

The trial court had both personal and subject matter jurisdiction. Although the trial judge stated that he was denying the prayer for injunctive relief, he ordered Wayne, Pamela and Gregory to use no other name for the boy than Gregory Wayne Presson. Since this is an order restraining certain behavior, we do not understand

what legal status it could have if it is not an injunction, and we therefore treat it as one.

Subject matter jurisdiction is clear. The appellate court acknowledged that the trial court could order the parents to refrain from instituting legal proceedings to change a minor child's surname, but held that there was no subject matter jurisdiction since the order was directed against the minor. While we agree that the order that was entered was an inappropriate intrusion into internal family affairs, this does not deprive the trial court of subject matter jurisdiction.

Although the question has never come before this court, it has previously been decided by our appellate court. (*In re Marriage of Omelson* (1983), 112 Ill. App. 3d 725; *Solomon v. Solomon* (1955), 5 Ill. App. 2d 297.) We agree with *Solomon* that changing a child's name is a matter incident to custody of the child, and that the court which had jurisdiction over the divorce can entertain a petition enjoining the name change (5 Ill. App. 2d 297, 302).

The change-of-name act of 1874 (Ill. Rev. Stat. 1979, ch. 96, pars. 1 to 3) states in section 1 that a petitioner may include his minor children if the name change is in their best interest; in section 2 that the affidavit for a change of name of a minor must be signed by "the parent or guardian having the legal custody of [the] minor"; and in section 3 that, in case of a minor, the notice of name change must be signed by the parent or guardian. This statute clearly treats the change of name of a minor child as an incident to custody. The standard applied, the best interest of the child, is identical to the standard used for custody determinations by the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602).

Pamela's suggestion that jurisdiction would extend only to a legal change of name proceeding is without

merit because that is not the exclusive means by which an individual can change his name. (*Reinken v. Reinken* (1933), 351 Ill. 409.) A *de facto* change accomplished by substituting Kelley for Presson on Gregory's school, medical and other records may have as great an effect on Gregory's daily life as a legal change. Since the court has jurisdiction to enjoin a legal change of name proceeding, it has jurisdiction to enjoin any other formal change of name as well. *Cf. Mark v. Kahn* (1956), 333 Mass. 517, 131 N.E.2d 758 (school enrollment); *Clinton v. Morrow* (1952), 220 Ark. 377, 247 S.W.2d 1015 (school enrollment); *Hall v. Hall* (1976), 30 Md. App. 213, 351 A.2d 917 (name child is called by school teachers and other community members).

The trial judge was also correct in holding that he had personal jurisdiction over Greg. If such jurisdiction were not a necessary incident of a custody determination a court could not order a minor to comply with custody decisions to which the child was not made a party. Although custody orders are usually directed at the parents, the court is, in effect, also ordering the child to reside with one parent and not the other. Regardless of the wisdom of the order, the trial court nevertheless had jurisdiction to enter it.

This brings us to the propriety of the order itself. Pamela argues that the common law right to change one's name (*Reinken v. Reinken* (1933), 351 Ill. 409, 413) without resort to a legal proceeding applies to minors. We prefer the reasoning used in other jurisdictions that have held that a change in a minor's surname shall be allowed only when the court finds that the change is in the best interests of the minor. (*Cohee v. Cohee* (1982), 210 Neb. 855, 860, 317 N.W.2d 381, 384; *In re Marriage of Schiffman* (1980), 28 Cal. 3d 640, 646-47, 620 P.2d 579, 583, 169 Cal. Rptr. 918, 922; *Flowers v. Cain* (1977), 218 Va. 234, 235-36, 237 S.E.2d 111, 112; *West v. Wright* (1971),

263 Md. 297, 299, 283 A.2d 401, 402; *Mark v. Kahn* (1956), 333 Mass. 517, 521-22, 131 N.E.2d 758, 762; *Clinton v. Morrow* (1952), 220 Ark. 377, 383, 247 S.W.2d 1015, 1018.) Further, we reject Pamela's suggestion that a child has a right to change his name, irrespective of his parents' wishes, under the first amendment to the United States Constitution.

To determine the best interest of the child, the court should consider the expressed wishes of the child and of both parents, the stated reasons for the proposed change, the child's age and maturity, the nature of the family situation, the strength of the tie between the child and each parent, any misconduct toward or neglect of the child by the parent opposing the change, and the name by which the child has customarily been called. In this case, less than five weeks after his mother's remarriage, a boy, then six years old, asked to use his mother's new surname and later testified that he preferred to be called by his mother's surname when he was with his mother, and by his father's surname when he was with his father. Pamela asked Gregory's teacher to abide by his wishes, and the name Kelley was added to his report card. Until this time, the child was called by the name he was given at birth, Gregory Wayne Presson.

Since the divorce, Gregory has lived with his mother and visited regularly with his father, who has also remarried and now resides approximately 200 miles away. There is no evidence that his father neglected or abused Gregory in any way. On the contrary, Wayne visited Gregory regularly, although it took some effort on his part to do so, expressed fondness and concern for his son, and made his support payments with regularity. In testifying, Wayne expressed fear that if Gregory continued to use Kelley until he reached majority any real choice would be taken from him and a *de facto* change would have occurred.

The appellate court held that the trial judge erred by ignoring Gregory's testimony that he wished to use both surnames. The trial judge's refusal to honor Gregory's wishes does not mean that he did not consider them. We disagree with the appellate court, for it makes the testimony of a seven-year-old boy the controlling factor. The standard is the best interests of the child, but the child at this stage in his development is not necessarily an able judge of what his best interests are since neither his emotional nor his mental development are complete. *Cf. Mark v. Kahn* (1956), 333 Mass. 517, 520-22, 131 N.E.2d 758, 761-62; *Application of Lone* (1975), 134 N.J. Super. 213, 216-17, 338 A.2d 883, 885; *Lazow v. Lazow* (Fla. App. 1962), 147 So. 2d 12, 14.

No doubt Gregory is sincere; so also are the thousands of young children who tell their parents they wish to be called Bo Duke, Rick Springfield, Muhammed Ali, Mr. T and Huckleberry Hound! No one doubts their sincerity, and few adults would try to prevent this informal adoption of a fantasy name. Still, most adults recognize that these wishes are a result of immaturity and lack of reflection which will pass as the children develop more adult processes of reasoning. These children are under no pressure to adopt new names, yet they do so readily and with conviction.

The situation for Greg Presson and others like him is more complex. Greg has recently experienced several wrenching changes in his life: his parents' divorce and their subsequent remarriages. The changes involve the two adults to whom he is most attached and on whom he is most dependent. His eagerness to please them as well as his mother's new husband, together with his natural anxiety and confusion, cause him to be particularly vulnerable to pressures from either parent.

Pamela's view of the situation is that the name change was entirely Greg's idea, but the record suggests

that this is not the complete story. It was not Greg, but the stepfather, Kelley, who informed Wayne in writing that "in future correspondence" and "in legal matters" Greg's name "is now legally Gregory Wayne Kelley." The relationship between Pamela and Wayne was so badly strained that they did not communicate directly with each other, and Wayne claims that Pamela prevented him from speaking to Gregory by telephone. Kelley's letter arrived less than two weeks after a heated dispute over visitation. It is difficult to believe that in these tense circumstances a child, then six years old, would believe that his mother was indifferent to which name he used, no matter what she told him. Dozens of spoken and unspoken cues could communicate contradictory messages to the child during the many hours spent in his mother's and stepfather's home. At the hearing Greg testified, "I just think she wants my name to be Kelley." His father, who spent much less time with him and had difficulty in establishing telephone contact with his son was ill-equipped to counteract these pressures.

That divorce creates extremely trying emotional situations for the children involved is one of those truths that is both unfortunate and self-evident. This court respects the earnest desires of Pamela, Wayne, and Kelley to make Gregory's life as normal as possible under the circumstances. Nevertheless, certain facts cannot be denied. After his parents divorced and remarried, Greg's life could never be the same as those of his peers still living in intact families. Since his mother's remarriage, he now has a different name than his mother and stepsiblings with whom he lives. This may cause some concern, confusion and embarrassment for him and for his mother, but that alone is not enough to warrant changing Greg's name. (*West v. Wright* (1971), 263 Md. 297, 302-03, 283 A.2d 401, 404; *Flowers v. Cain* (1977), 218 Va. 234, 238-39, 237 S.E.2d 111, 114-15.) Greg visits reg-

ularly with his father. If he were to adopt his mother's new name, then he would be subject to embarrassment and confusion when with his father's new family.

The solution which Greg proposes, using one name with his mother and one with his father, is a childlike one, born of immaturity and eagerness not to offend anyone. This "solution" only increases the confusion. The record shows that Greg frequently continues using the other name after transition from one environment to the other, and then becomes flustered and embarrassed. In order to make the best of a bad situation, Greg needs to know his identity. He is not two people—Gregory Pre-. sson and Gregory Kelley. He is one, and his one name demonstrates that to him, while at the same time strengthening the tie to his father's love and care. The noncustodial parent necessarily is at a disadvantage in maintaining a strong relationship with the child and maintenance of that parent's name goes far toward demonstrating his continuing interest in and identity with the child. *In re Application of Robinson* (1974), 302 Minn. 34, 35-36, 223 N.W.2d 138, 140; *West v. Wright* (1971), 263 Md. 297, 283 A.2d 401, 404; *Mark v. Kahn* (1956), 333 Mass. 517, 521-22, 131 N.E.2d 758, 762; *Application of Lone* (1975), 134 N.J. Super. 213, 220-21, 338 A.2d 883, 887; *Lazow v. Lazow* (Fla. App. 1962), 147 So. 2d 12, 14.

The situation with respect to Greg's other new family is relevant. Wayne's wife has custody of her children by a previous marriage, who are known by their father's name, McQueen. Wayne testified that he explained to Greg that his stepbrothers use that name because Mr. McQueen is their dad, just as Presson is Greg's dad's name.

There are other reasons why Greg should not be permitted to *de facto* adopt his mother's new surname. Kelley has not adopted Gregory and is under no legal obli-

gation to support him. Those obligations are being faithfully and willingly met by Wayne, the natural father. It would be ironic if the courts were to require Wayne to meet these obligations and yet not honor his wish to help maintain the parental bond under difficult circumstances by allowing the child to utilize his mother's new surname just five short weeks after her remarriage!

We therefore hold that the trial judge acted properly in ordering Pamela not to change Gregory's name, but we are concerned by the overbreadth of the order. It should not have extended to informal situations within the family. There are some relationships which the law does not have the capacity to control—the name a child asks others to call him on the playground is one of them. It would be extremely difficult to enforce such an order. Are we to encourage Greg's stepsiblings to spy on him and to record every instance in which he uses the name "Greg Kelley"? Are we to perpetuate the dissension between the natural parents by creating a situation in which Greg runs to his father saying "my mother let me be called Greg Kelley last Tuesday" and the father in turn comes to court to have his former wife held in contempt? Are we to install hidden microphones on the baseball diamond? Such suggestions are preposterous.

Although we appreciate that the consistent use of a single name is important to the child's emotional development, we will not approve the entry of an order which the circuit court cannot enforce. Thus, we cannot prevent Pamela from calling her son Greg Kelley or by any other name or nickname within her own living room, and no order should be directed towards enjoining her from referring to him by a name other than Presson within the family confines. The circuit court can effectively enforce, however, an order enjoining the custodial parent (Pamela) and Gregory, from changing Gregory's name in any legal proceeding or using any other name in official

records or membership applications or records, and it should not have gone beyond what it can effectively do.

For the above reasons we reverse the appellate court and affirm the circuit court as modified herein. We remand this case to the trial court for entry of an order enjoining Pamela Kelley and Gregory Wayne Presson from changing Gregory Wayne Presson's name in any legal proceeding or in any official records, including school, medical or hospital records or membership applications.

*Appellate court reversed; circuit court affirmed as modified; cause remanded, with directions.*