*In re* MARRIAGE OF LYNN SCHAEFER, n/k/a Lynn Buckley, Petitioner-Appellant, and NORMAN B. SCHAEFER, Respondent-Appellee.

First District (1st Division)   No. 86—1098

Opinion filed September 28, 1987.

Phillip A. Battaglia, of Hickory Hills, for appellant.

Richard Gigante, of Chicago (Paul R. Jenen, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

The petitioner Lynn Schaefer, n/k/a Lynn Buckley, appeals from an order entered by the trial court enjoining her from using the name Buckley as a surname for the two minor children of petitioner and respondent.

The petitioner Lynn Schaefer, n/k/a Lynn Buckley, and the respondent Norman Schaefer were married on December 27, 1969. Born of the marriage were Wren and Nicholas-John, 12 and 10 years old, respectively, at the time of the hearing on this petition for a restraining order. On March 22, 1978, a judgment of dissolution of marriage was granted. Custody of the two minor children was granted to Lynn Schaefer and reasonable visitation rights were conferred upon Norman Schaefer. Lynn Schaefer was remarried in May of 1980 to William Buckley.

On September 9, 1982, Norman Schaefer filed a petition for modification of visitation rights alleging that Lynn Buckley made it difficult for him to see the children. An order was entered on October 21, 1982, granting Norman Schaefer visitation rights on specific dates and times. A separate order was entered on that same date requiring Lynn Buckley to provide Norman Schaefer with the children's school records and to inform him of any psychological problems they may be having at school.

On June 18, 1984, Norman Schaefer filed a petition for rule to show cause and for modification alleging that Lynn Buckley was not providing him with copies of his children's report cards in accordance with prior orders and that she was interfering with his visitation rights. On March 6, 1985, the court entered an order that the children were to hand deliver their report cards to Norman Schaefer upon receipt.

On March 12, 1986, Norman Schaefer filed a petition for restraining order which prayed that Lynn Buckley be permanently enjoined and restrained from using the surname of "Buckley" on school records. Lynn Buckley filed a response to the petition admitting the use of the "Schaefer-Buckley" name by the children since March 1983. In her response she further asserted that Norman Schaefer was aware that the children were using the "Schaefer-Buckley" name since March 1983. Therefore, he should be estopped from seeking injunctive relief. Moreover, she filed a petition seeking a legal name change of the minor children to "Schaefer-Buckley." The trial court did not rule on the latter petition.

On March 26, 1986, a hearing was held on Norman Schaefer's petition for injunctive relief. Immediately preceding that hearing, the

petitioner's attorney moved to take a discovery deposition of Norman Schaefer. The motion was denied by the trial court. During the hearing, both parties testified. Additionally, the trial court conducted an *in camera* examination of the children.

Norman Schaefer testified that he was not aware that the children were using the "Schaefer-Buckley" name until March 1985, when he received a "lump of report cards" listing his children as "Schaefer-Buckley." Moreover, he noticed that the label on his son's asthma medication listed the son as Nicholas Buckley. His testimony does not reveal the date that he made this discovery.

Lynn Buckley testified that the two minor children began "exclusively and continuously" using the "Schaefer-Buckley" name in March or April of 1983. Furthermore, the "Schaefer-Buckley" name appeared on school records, medical records, library cards, bank accounts and in newspaper articles. She further testified that Norman Schaefer became aware of the use of the "Schaefer-Buckley" name as early as the summer of 1984, when he noticed the name Nicholas Buckley on his son's prescription bottle. Moreover, she contends that he did not object to the use of the Buckley name until December 31, 1985.

During the *in camera* interview with the minor children, neither of them objected to the use of the Schaefer name. Wren Schaefer testified that she wanted to use her father's name because she was proud of the Schaefer name and would not be embarrassed to use it. However, she further testified that she wanted to use the "Schaefer-Buckley" name because her little sister was named Buckley, her stepfather paid her tuition, and she is known by her friends as "Schaefer-Buckley." When asked by the court whether she would switch her name to Buckley-Schaefer, she responded that "anything is fine." She acknowledged that she did not believe that she would be loved any more or less by her parents if she used Schaefer as her last name.

Nicholas Schaefer testified that he liked the Buckley name because his sister Sara is named Buckley and his mother wanted him to use that name. He also testified that it would not embarrass him to use the Schaefer name nor would he lose any friends.

On March 26, 1986, at the conclusion of the hearing, the trial court entered an order permanently enjoining Lynn Buckley from using "the surname of Buckley for and on behalf of the children at school or any matters dealing with the daily life; to this end the name Buckley is to be deleted from the children's school records and all other documents, legal or otherwise ***." On April 23, 1986, Lynn Buckley filed this appeal from that order.

■ The standard of review in determining whether a minor child's surname should be changed is the best interest of the child. (*In re Marriage of Presson* (1984), 102 Ill. 2d 303, 308, 465 N.E.2d 85; *Cohee v. Cohee* (1982), 210 Neb. 855, 860, 317 N.W.2d 381, 384.) The Illinois Supreme Court, in *Presson,* set forth the following criteria to be considered in determining the best interest of the child:

"To determine the best interest of the child, the court should consider the expressed wishes of the child and of both parents, the stated reasons for the proposed change, the child's age and maturity, the nature of the family situation, the strength of the tie between the child and each parent, any misconduct toward or neglect *** by the parent opposing the change, and the name by which the child has customarily been called." *In re Marriage of Presson* (1984), 102 Ill. 2d 303, 309, 465 N.E.2d 85.

In 1985, the Illinois legislature expanded the standard of review to "clear and convincing evidence that the change is necessary to serve the best interest of the child." The relevant factors in determining the best interest of the child under this standard of review are: "(1) the wishes of the parents *** (2) the wishes of the child and the reasons therefor *** (3) the interaction and interrelationship of the child with his or her parents *** (4) the child's adjustment to his or her home, school and community ***." Ill. Rev. Stat. 1985, ch. 96, par. 1.

The petitioner expressed her desire for the children to use the Schaefer-Buckley name, while the respondent expressed his desire that the children use solely the Schaefer name. The children expressed a love for both parents and the testimony did not indicate that there would be an adverse affect on the children if they revert to using the Schaefer name.

The respondent asserts that even where a child expresses a desire for a name change, these desires may be disregarded if the court determines that the reasons are inappropriate. He supports this proposition with *In re Marriage of Presson* (1984), 102 Ill. 2d 303, 310, 465 N.E.2d 85, and *Lazow v. Lazow* (Fla. App. 1962), 147 So. 2d 12, 14. In *Presson,* the court found that a seven-year-old child at that stage of development was not necessarily able to judge his best interest since neither his mental nor his emotional development was complete. (*In re Marriage of Presson* (1984), 102 Ill. 2d 303, 310; 465 N.E.2d 85, 88.) Other reviewing courts have held that a 12-year-old child is not capable of making an intelligent choice regarding his name. *Lazow v. Lazow* (Fla. App. (1962), 147 So. 2d 12, 14, cited in *In re Mar-*

*riage of Omelson* (1983), 112 Ill. App. 3d. 725, 733, 465 N.E.2d 951.

The petitioner maintains that the length of time the children have used "Schaefer-Buckley," whether nine months or three years, has resulted in the name's becoming completely integrated into the children's lives. The respondent maintains that whether the children used the "Schaefer-Buckley" name for nine months or three years, the Schaefer name was used for the majority of the children's lives.

Norman Schaefer as the noncustodial parent is at a disadvantage in maintaining a strong relationship with his children. Maintenance of the Schaefer name goes far toward demonstrating his continuing interest in and identity with the children. (*In re Marriage of Presson* (1984), 102 Ill. 2d 303, 312, 465 N.E.2d 85; *In re Application of Robinson* (1974), 302 Minn. 34, 35-36, 223 N.W.2d 138, 140.) Similar to the facts in *Presson*, William Buckley has not adopted Wren and Nicholas and, therefore, is under no legal obligation to support them. It is undisputed that Norman Schaefer is willingly meeting his financial obligations towards his children. The record does not reflect any misconduct or neglect of the children by Norman Schaefer. Moreover, the children express love for both of their natural parents.

■ The trial court heard testimony regarding the factors set forth under both *Presson* and the change of name statute. Consideration was given to the express wishes of the parents and the children. Moreover, consideration was given to the children's age, their relationship to each parent and the name the children were customarily called. The judgment of the trial court enjoining the change of the minor children's name will not be disturbed on appeal unless the judgment is against the clear weight of the evidence. (*Reed v. Reed* (Okla. 1959), 338 P.2d 350, 353.) In the instant case, the trial court heard the testimony of the parties and interviewed the children. The record does not reflect that the trial court's decision was against the manifest weight of the evidence.

The petitioner contends that Norman Schaefer allowed the children to use the "Schaefer-Buckley" name for at least nine months (March 1985 thru December 1985). Therefore, the long inaction by the respondent should estop him under the doctrine of *laches* from now claiming that his parental relationship may be damaged if the children continue to use the "Schaefer-Buckley" name.

The petitioner asserts that equitable estoppel is the basis for the doctrine of *laches* and "laches, in a general sense, is the neglect for an unreasonable and unexplained length of time to do that which could and should have been done earlier, if at all." 7 Ill. L. and Prac. *Chancery* secs. 111, 112 (1954).

The respondent argues that the doctrine of *laches* should not apply in this case. We agree. He supports this contention with *Reed v. Reed* (Okla. 1959), 338 P.2d 350, 354, *Bodine v. Bodine* (1984), 127 Ill. App. 3d 492, 495, 468 N.E.2d 1004, and *Matzen v. Matzen* (1979), 69 Ill. App. 3d 69, 73, 387 N.E.2d 14.

In *Reed*, the plaintiff Marguerite Reed also raised the question of *laches*, asserting that the defendant Guy Dean Reed should have taken action to enjoin the use of the Baldwin name when he first learned the minor child was using the Baldwin surname. In *Reed*, the wife began using her new surname on behalf of the minor son in 1951, the father became aware of that usage in 1952 and did not file his petition to enjoin the use of that name until 1957. The Oklahoma Supreme Court affirmed the findings of the trial court that *laches* did not apply. (Okla. 1959), 338 P.2d 350, 354.

■ Courts will apply the doctrine of equitable estoppel where the voluntary conduct of one party precludes that party from asserting rights against another person who has in good faith relied upon that party's conduct to change his position for the worse. (*Bodine v. Bodine* (1984), 127 Ill. App. 3d 492, 495, 468 N.E.2d 1004; *Matzen v. Matzen* (1979), 69 Ill. App. 3d 69, 73, 387 N.E.2d 14.) The facts upon which equitable estoppel is based must be proven by clear and convincing evidence by the party asserting equitable estoppel. 69 Ill. App. 3d 69, 72, 387 N.E.2d 14.

■ In the instant case Lynn Buckley failed to prove by clear and convincing evidence that she relied on the conduct of Norman Schaefer as a basis for changing the children's names to "Schaefer-Buckley." Consequently, she has failed to prove that the doctrine of estoppel prevented the respondent from seeking injunctive relief.

The petitioner further maintains that the trial court's order is overly broad and cannot be enforced. She supports this contention with *In re Marriage of Presson* (1984), 102 Ill. 2d 303, 313, 465 N.E.2d 85. In *Presson*, the Illinois Supreme Court held:

> "[W]e cannot prevent Pamela from calling her son Greg Kelley or by any other name or nickname within her own living room, and no order should be directed towards enjoining her from referring to him by a name other than Presson within the family confines. The circuit court can effectively enforce, however an order enjoining the custodial parent (Pamela) and Gregory, from changing Gregory's name in any legal proceeding or using any other name in official records or membership applications or records, and it should not have gone beyond what it can effectively do." 102 Ill. 2d 303, 313-14, 465 N.E.2d 85.

■ We agree that the order as written is very similar to the order in the *Presson* case. As noted by the Illinois Supreme Court in *Presson*, a court cannot enforce the use of a certain name in an informal situation. The language in the current order "or any matters dealing with the daily life" and "all documents, legal or otherwise" cannot be enforced. The trial court in the instant case should have been explicit as to precisely where the name cannot be used.

Consistent with the Illinois Supreme Court, the March 26, 1986, order shall be modified, enjoining Lynn Buckley from changing Wren L. Schaefer's and Nicholas-John W. Schaefer's names in any legal proceeding or in any official records, including school records, medical records and bank accounts.

Finally, the petitioner argues that the trial court abused its discretion in denying the petitioner's motion to take a discovery deposition of Norman Schaefer.

■ The respondent asserts that the appellate court does not have jurisdiction to rule on this issue. Supreme Court Rule 303(c)(2) requires that the notice of appeal "specify the judgment or part thereof appealed from and the relief sought from the reviewing court." (107 Ill. 2d R. 303(c)(2).) Consequently, a reviewing court lacks jurisdiction to review other judgments which have not been specified in a notice of appeal. *Sterne v. Forrest* (1986), 145 Ill. App. 3d 268, 279, 495 N.E.2d 1304; *E. M. Melahn Construction Co. v. Village of Carpentersville* (1981), 100 Ill. App. 3d 544, 548, 427 N.E.2d 181.

The respondent maintains that in the present case, the trial court's oral decision denying the petitioner's motion to take discovery of Norman Schaefer was not included in the notice of appeal. The notice of appeal filed by Lynn Buckley seeks only the reversal of the written order entered by the trial court on March 26, 1986, granting the respondent's petition for injunctive relief. The notice of appeal does not refer to the trial court's March 26, 1986, oral decision denying discovery.

■ A reviewing court has a duty to consider its jurisdiction and to dismiss the appeal if it determines it does not have jurisdiction. *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440, 490 N.E.2d 1252; *Berber v. Hass* (1964), 30 Ill. 2d 263, 266, 195 N.E.2d 622.

This court has held that where a defect in the notice of appeal is one of form rather than substance, the appellate court is not necessarily deprived of jurisdiction. (*Ebert v. Dr. Scholl's Foot Comfort Shops* (1985), 137 Ill. App. 3d 550, 556, 484 N.E.2d 1178; *First National Bank v. Aurora* (1976), 41 Ill. App. 3d 326, 329, 353 N.E.2d 309.) We

further held that "the notice should be considered as a whole, and absence of strict technical compliance is not fatal." *Ebert v. Dr. Scholl's Foot Comfort Shops* (1985), 137 Ill. App. 3d 550, 557; *First National Bank v. Aurora* (1976), 41 Ill. App. 3d 326, 330, 353 N.E.2d 309.

■ Assuming, *arguendo*, that petitioner's notice of appeal should have specified that she was appealing the March 26, 1986, denial of the oral motion to take the discovery deposition of Norman Schaefer and the March 26, 1986, order granting the respondent's petition for injunctive relief, the omission was one of form rather than substance.

The trial court "may at any time on its own initiative *** make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." (107 Ill. 2d R. 201(c)(1).) Moreover, trial courts can restrict pretrial discovery where probative value is lacking. *People ex. rel. Illinois State Dental Society v. Norris* (1979), 79 Ill. App. 3d 890, 901, 398 N.E.2d 1163, 1172.

■ The record discloses that the original petition for injunctive relief was mailed with a notice of motion on January 17, 1986. Yet, the petitioner's attorney did not mail the notice of deposition to the respondent until March 19, 1986, to take a discovery deposition of the respondent on March 25, 1986, which was only one day prior to the trial date. On March 24, 1986, the petitioner's attorney received a letter from the respondent's attorney refusing to appear for the deposition. On March 26, 1986, the petitioner's attorney requested a continuance in order to conduct a discovery deposition of Norman Schaefer. The trial court denied the motion for discovery and proceeded with the hearing.

There is no indication in the record to support an argument that the trial court abused its discretion. Moreover, the petitioner did not demonstrate that she was prejudiced by her failure to take discovery of Norman Schaefer. In fact, the petitioner's attorney was allowed to cross-examine the respondent to ascertain any facts that would have been discovered one day earlier in a discovery deposition.

In our opinion, the trial court's findings were not against the manifest weight of the evidence, nor do its actions constitute an abuse of discretion. For the reasons set forth above, we affirm the circuit court as modified herein.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.