*In re* PETITION OF INARA M. HOWARD, on Behalf of Devin K. Bailey, a Minor (Inara M. Howard, on Behalf of Devin K. Bailey, a Minor, Petitioner-Appellee, v. Robert Jon Bailey, Respondent-Appellant).

Second District   No. 2—02—1109

Opinion filed November 5, 2003.

Bruce A. Slivnick, of Law Offices of Todd A. Heller & Associates, of Deerfield, for appellant.

Alvin L. Catella, of St. Charles, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent, Robert Jon Bailey, the father of the minor, Devin K. Bailey, appeals a judgment changing the minor's name to Devin K. Howard. Respondent argues that petitioner, Inara M. Howard, Devin's mother, did not prove by clear and convincing evidence that the name change would be in the minor's best interest as required by section 21—101 of the Code of Civil Procedure (735 ILCS 5/21—101 (West 2002)). We affirm.

Petitioner and respondent were married in 1991 in California, where Devin was born in the same year. When petitioner and respondent were divorced in 1994, they were awarded joint legal custody of their son. Petitioner received physical custody of Devin. Respondent, who still lives in California, has visitation rights and is obligated to pay child support. On July 25, 2002, petitioner, now living in Carpentersville, filed her petition. Respondent filed an answer, and the cause went to a hearing on September 12, 2002. We summarize the testimony as it is given in the certified bystander's report.

Petitioner testified as follows. After the divorce, she moved with Devin to Tacoma, Washington, and later to Illinois. She remarried in December 1994 and has two other children with her current husband, John J. Howard, Jr. Respondent has not seen Devin in the past four years. Since petitioner and Devin moved to Illinois, two years before the hearing, respondent has never tried to contact either of them by phone. The last time respondent called was when they lived in Tacoma.

On this occasion alone, petitioner did not allow respondent to talk to Devin because Devin had been extremely upset by respondent's strange behavior the last time they had spoken. Respondent then began yelling, using profanity, and threatening to kill Mr. Howard. Petitioner neither encourages nor discourages personal or telephone contact between Devin and respondent but lets her son decide for himself. When making decisions affecting Devin's well-being, petitioner never consults with respondent because he has never shown any interest in participating in those decisions.

Petitioner testified that she filed the petition because Devin had repeatedly asked her to change his last name to Howard. Before petitioner filed the petition, Devin received a letter or card from respondent once or twice a year. Since filing the petition, petitioner has daily received letters to Devin from respondent. She makes sure Devin reads them. Many of the letters have disturbing contents; for instance, "Petitioner's Exhibit A" (not in the record) is the cover from a CD by respondent's rock band, "Serious Suicide," and shows respondent making an obscene gesture. Since moving to Illinois, petitioner has received a monthly child support check for $63, written by respondent's father and drawn on the two Baileys' joint account. Before that, respondent's payments were sporadic. The envelopes containing the current checks are addressed by respondent but include no inquiries about Devin's welfare. Asked to describe the father-son relationship, petitioner said there is none and has been none since Devin was born.

John J. Howard, Jr., testified that he has been married to petitioner for 7½ years. He considers Devin to be his own child because he has acted as Devin's father for most of the boy's life. The family already refers to Devin by the surname "Howard," not "Bailey."

Respondent testified as follows. He regularly pays his court-ordered child support. For the first four years after the divorce, he tried to maintain a close relationship with Devin by visiting regularly. At the hearing, photographs showing the father-son relationship were introduced into evidence. Copies of these photographs are in the record on appeal. Financial and medical problems (not further specified) have kept respondent from traveling to visit Devin for the past four years. Respondent tries to call his son regularly but is not granted access to the child. Respondent writes his son regularly. He wants to have a close relationship with Devin and remain actively interested in the child's life.

Devin Bailey was questioned in chambers by the trial judge with counsel present. Devin testified as follows. He has not seen his father

in four years and does not have a relationship with him. His father has not called him since Devin moved to Illinois. Once, while Devin and his grandmother were talking by phone, the grandmother offered to put respondent on, but (we quote the bystander's report) "he told her not to, because he did not wish to speak to him." Before the petition for a name change was filed, Devin rarely received mail from his father. Since the petition was filed, Devin has regularly received mail from respondent, but "much of it is strange and nonsensical and makes [Devin] uncomfortable."

Devin told the court that it was his idea to have his name changed. At first, petitioner said no, but finally she agreed. Devin wants the change because he considers the Howards his real family; because it is difficult in school and other activities to have a last name different from that of the rest of his family; and because he does not want to share the last name of "a man who has never acted like his father or cared about him."

The bystander's report states that the trial judge found as follows:
"a) That the testimony of the mother and father canceled each other out[,] which left him with the child's wishes.

b) The child stated he wanted to be called by his new name because it made him feel like part of the family.

c) Child said he did not have a relationship with his father because he has not seen much of him."

The trial judge decided to allow the name change because Devin wanted it and because Devin experienced difficulties in school and recreational activities as a result of having a last name different from the rest of his family. After the court granted the petition, respondent timely appealed.

Respondent argues that the trial court abused its discretion in allowing the name change petition because petitioner failed to prove by clear and convincing evidence that the change was in the minor's best interest. Respondent asserts that the trial court unduly emphasized the wishes of a minor who is still developing emotionally; that the inconvenience Devin experiences in school and recreation is not a compelling reason for the name change; and that the trial court slighted the importance of maintaining a strong relationship between the child and the noncustodial parent.

■ Petitioner has not filed a brief. However, as the record is short and the issues are straightforward, we may decide the merits without the aid of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976). For the reasons that follow, we hold that the trial court did not err in allowing the name change.

■ This case is governed by section 21—101 of the Code of Civil Procedure, which, as pertinent here, reads:

"An order shall be entered as to a minor only if the court finds by clear and convincing evidence that the change is necessary to serve the best interest of the child. In determining the best interest of a minor child under this Section, the court shall consider all relevant factors, including:

(1) The wishes of the child's parents and any person acting as a parent who has physical custody of the child.

(2) The wishes of the child and the reasons for those wishes. The court may interview the child in chambers to ascertain the child's wishes ***. ***

(3) The interaction and interrelationship of the child with his or her parents or persons acting as parents who have physical custody of the child, step-parents, siblings, step-siblings, or any other person who may significantly affect the child's best interest.

(4) The child's adjustment to his or her home, school, and community." 735 ILCS 5/21—101 (West 2002).

■ The trial court ruled that under the facts as it found them, the name change would serve Devin's best interest. Because the trial court had the prerogative of weighing the evidence and finding the facts, we must defer to its decision unless the judgment is against the manifest weight of the evidence. See *Bazydlo v. Volant*, 164 Ill. 2d 207, 214-15 (1995); *In re Petition of Craig*, 164 Ill. App. 3d 1090, 1094 (1987). Our deference rests on the recognition that the trial judge is able to observe the witnesses as they testify and is better suited than this court to judge their credibility and to determine what weight to give their testimony. *Howard v. Zack Co.*, 264 Ill. App. 3d 1012, 1024 (1994). The trial judge's superior perspective is especially important in this case. Not only can we not observe the witnesses testify, but we lack a full transcript of their testimony. Moreover, the trial judge's ability to observe the witnesses, especially the minor, is particularly crucial because this case turns heavily on the evaluation of the minor's maturity, his emotional makeup, and the seriousness of his desire to change his name.

We cannot say that the trial court's conclusion that the proposed name change would serve Devin's best interest was against the manifest weight of the evidence. Given the court's factual determinations, the factors in section 21—101's nonexclusive list generally support the judgment for petitioner. The first factor, the wishes of the minor's parents and any person acting as a parent who has physical custody of the child, does not strongly favor either party, as the parents are obviously at loggerheads. Nevertheless, Mr. Howard, who has lived

with Devin for most of the minor's life, did testify that he sees Devin as his own child and refers to Devin by the last name Howard. It is a fair inference from this testimony that he strongly favors the name change. Therefore, the first factor favors petitioner somewhat.

The second factor, the child's wishes and the reasons therefor, strongly supports petitioner. Again, we emphasize that the trial judge was far better able than are we not only to ascertain the child's wishes but also to gauge the minor's conviction, maturity, and clarity of mind. Devin's testimony demonstrated that he did not reach his decision casually or through coercion. He has lived with the Howards for over seven years and considers them his "real family." He has not seen respondent in four years, has not heard from respondent by telephone since moving to Illinois, and seldom received mail from respondent until the middle of 2002. Even then, respondent's letters made Devin "uncomfortable" and drew the two no closer. Devin testified not merely that he did not get along with respondent but that respondent has never acted like his father or cared for him.

Even from the limited record, it is clear that Devin deeply desires the name change and is not motivated by trivial or irrational considerations. Although part of his motivation is to have an easier time adjusting to school and play, convenience is not primary. (Moreover, as the fourth statutory factor implies, Devin's adjustment to his school and community is a proper consideration.) The trial judge could conclude that the minor's identity and, put simply, his happiness, would be served by changing his name to that of his "real family." Thus, the second factor strongly supports petitioner.

The third factor, the minor's interactions with his parents, step-parent, and others who may significantly affect his best interest, also favors petitioner. We have noted how Mr. Howard and Devin provided evidence of the strong bond between the minor and the Howards and the lack of any such bond between the minor and respondent. As one would expect, petitioner testified to similar effect. However, even respondent admitted that he has not visited his son during the past four years, although he stated vaguely that "financial and medical problems" prevented him from doing so.

The fourth factor, the child's adjustment to his home, school, and community, also supports the name change. Devin testified that having a name different from the other members of his "real family," including his stepsiblings, creates difficulties for him in school and elsewhere. While this testimony is also somewhat vague and would not *by itself* support the name change (see *Stockton v. Oldenburg*, 305 Ill. App. 3d 897, 900 (1999); *In re Parentage of Mattson*, 240 Ill. App. 3d 993, 997-98 (1993)), it does favor petitioner.

In all, the pertinent considerations militate in favor of the trial court's judgment granting the petition. However, respondent asserts that because Devin was only 11 years old, the trial court should not have made his wishes controlling. We disagree. It is true that one opinion, cited approvingly by an Illinois court, states that a 12-year-old child is not capable of choosing intelligently " 'in the matter of his name.' " *In re Marriage of Omelson*, 112 Ill. App. 3d 725, 733 (1983), quoting *Lazow v. Lazow*, 147 So. 2d 12, 14 (Fla. App. 1962). However, we cannot view such a categorical statement as reasonable, and our courts have recognized that a young child may be sufficiently mature that his or her preferences should be accorded great weight. See *Craig*, 164 Ill. App. 3d at 1093 (trial court rightly accorded importance to clear and well-considered preference of 12-year-old for name change).

Although the trial court in *Craig* noted at some length that the child there was unusually mature and intelligent, the appellate court did not specifically rely on that finding. More importantly, while the trial judge here did not specifically state that Devin is unusually mature or intelligent, the judge apparently did believe that Devin's preference was well-considered. The record supports that conclusion. Devin articulated clear and plausible reasons for desiring to change his name, and he had lived with the Howards for years before petitioner filed the petition. Again, we stress that the trial judge was able to observe the minor as he testified, and we shall not disturb the judge's decision to give the minor's personal preferences serious consideration.

Respondent also argues that the trial court did not give sufficient weight to the importance of preserving the relationship between the noncustodial parent and the child. Respondent is correct that "[t]he noncustodial parent necessarily is at a disadvantage in maintaining a strong relationship with the child and maintenance of that parent's name goes far toward demonstrating his continuing interest in and identity with the child." *In re Marriage of Presson*, 102 Ill. 2d 303, 312 (1984). However, the force of this consideration is exceedingly dubious here. Devin testified unequivocally that he has *no* relationship with respondent and that (to quote the bystander's report) respondent "has *never* cared about him." (Emphasis added.) The trial court could have concluded that disallowing the name change would not preserve a nonexistent father-son relationship but would merely allow respondent to persist in the chimerical hope of creating such a relationship.

Respondent argues that this case is similar to *Presson, Mattson,* and *Omelson*. In *Presson* and *Mattson*, the reviewing court affirmed the denial of the petition for a name change, while here respondent

asks us to *reverse* the trial court under a highly deferential standard of review. In any event, all of these cases are factually distinguishable from this one.

In *Presson*, the supreme court affirmed as modified an order barring the change of the minor's surname to that of his stepfather. The child was five years old when his parents were divorced, six years old when his mother remarried and his stepfather told the child's father of the desired name change, and seven years old when the trial court heard evidence on the issue. The supreme court remanded the cause for the entry of an order prohibiting the mother or stepfather from changing the child's name in any legal proceeding or official record. *Presson*, 102 Ill. 2d at 314.

Although *Presson* was decided before section 21—101 took effect, the supreme court applied the same "best interest of the child" test that the statute uses. *Presson*, 102 Ill. 2d at 308. However, the facts that were pertinent to deciding the child's best interest were very different from those here. In *Presson*, when the name-change petition was brought, the minor's parents had been divorced for only about 15 months, and the child had lived with his new family for only about a year. Here, when petitioner filed her petition, she and respondent had been divorced for about eight years and Devin had lived with his new family for more than seven years—most of his life. In *Presson*, the court inferred that the name change was not the child's idea, as he was extremely young and his mother and stepfather apparently had pressured him into seeking the change. *Presson*, 102 Ill. 2d at 310-11. Here, Devin testified unequivocally that the name change was his idea and that petitioner originally opposed it. Furthermore, unlike Devin here, the minor in *Presson* was equivocal and confused; he testified that he preferred to be called by his mother's surname when he was with her and by his father's surname when he was with him. *Presson*, 102 Ill. 2d at 309. Not only was this desire impractical and thus a reflection of the minor's immaturity (*Presson*, 102 Ill. 2d at 312), but it demonstrated that the child still felt a bond with his father. That is not true here.

Finally, in *Presson* there was evidence beyond the father's testimony that a real bond did exist between the father and his son. The father had visited regularly with the son since the divorce and made his support payments regularly. *Presson*, 102 Ill. 2d at 309. Here, respondent did not visit Devin in the four years before the petition was filed. Even if the trial court was required to credit respondent's vague explanation that financial and medical problems were to blame (an explanation that seems not to have impressed the minor himself), the court could still consider that in these four years,

respondent rarely wrote his son until petitioner instituted this proceeding.

*Mattson* is also distinguishable from this case. There, we wrote, "The *only* evidence that petitioner presented of the minor's best interest was that she had been teased by schoolmates on three occasions." (Emphasis added.) *Mattson*, 240 Ill. App. 3d at 997. Furthermore, the child was in kindergarten when the trial court heard the petition. *Mattson*, 240 Ill. App. 3d at 994. Thus, the name change was the mother's idea and the child's wishes played no role in the best-interest calculus. Finally, at the time of the hearing, the child had been living apart from the father only briefly and there was no evidence that he had failed to show an interest in maintaining a relationship with her. Therefore, unlike here, the preservation of a strong parent-child bond was a compelling reason to deny the name change.

*Omelson* is also distinguishable. There, the mother filed the petition to change her daughter's name just one month after she remarried and five months after her marriage to the father had been dissolved. At this time, the child was barely five and had been residing in her new home for about seven weeks. *Omelson*, 112 Ill. App. 3d at 726. The father had exercised his visitation rights regularly (*Omelson*, 112 Ill. App. 3d at 729), and there was no evidence that he had shown a lack of interest toward his child (*Omelson*, 112 Ill. App. 3d at 732). The mother's main argument for the name change was that she feared the child would be exposed to harassment at school, but the mother produced no evidence of such harassment. *Omelson*, 112 Ill. App. 3d at 733. In reversing, the appellate court observed that the five-year-old child had obviously not initiated the attempt to have her name changed. *Omelson*, 112 Ill. App. 3d at 729. The court emphasized that the father, who had not been separated from his daughter for long and continued to visit her and pay child support, had a legitimate interest in preserving his bond with his daughter. *Omelson*, 112 Ill. App. 3d at 730-31.

Here, in contrast to *Omelson*, the minor strongly desired the name change and sought it only after he had established a long and close relationship with his stepfather and the stepfather's children. Even more importantly, Devin's testimony, which the trial court credited, was unequivocal that respondent had not visited Devin in four years, had rarely written him in that time, and had failed to create a bond of any sort between himself and Devin. Also, Devin testified that he actually had experienced inconvenience and discomfort from having a name different from the rest of his "real family." Unlike the trial court in *Omelson*, the trial court here could legitimately consider the child's own preferences, did not need to rely on speculation about the

1210

child's best interest, and could disregard the significance of preserving the (nonexistent) parent-child bond.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GROMETER and CALLUM, JJ., concur.