# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Piegari*, 2016 IL App (2d) 160594

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF KARYN PIEGARI, Petitioner-Appellant, and ALEXANDER PIEGARI, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0594 |
| Filed | November 3, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-D-53; the Hon. Robert E. Douglas, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Benjamin W. Meyer, of Mirabella, Kincaid, Frederick & Mirabella, LLC, of Wheaton, for appellant.<br><br>Robert G. Black, of Law Offices of Robert G. Black, of Naperville, for appellee. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Presiding Justice Schostok and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioner, Karyn Piegari, appeals from the trial court's interlocutory order that denied her petition to hyphenate her children's surnames and that, on the motion of respondent, Alexander Piegari, enjoined Karyn from hyphenating the children's surnames on any "official document." We affirm.

¶ 2    Karyn and Alexander were married in September 2011. Their marriage resulted in three children—L.K.P., D.K.P., and J.J.P. In January 2015, Karyn petitioned to dissolve the marriage. (The parties' dissolution case is still pending in the trial court.) In March 2015, the trial court granted Karyn exclusive possession of the marital home. One year later, in March 2016, an agreed parenting plan was entered, which allocated to Karyn a majority of the parenting time (Alexander had the children on two weeknights, for two hours, and on one weekend day each week) but granted both Karyn and Alexander equal decision-making responsibilities for the children.

¶ 3    In June 2016, Karyn filed a petition seeking a court order to change the children's surnames, pursuant to section 21-101 of the Code of Civil Procedure (Code) (735 ILCS 5/21-101 (West 2014)). In the petition, Karyn alleged, *inter alia*, that, after the dissolution of her marriage to Alexander, she wished to resume the use of her maiden name—"Crider"—and that hyphenating the children's surnames—to "Piegari-Crider"—would "avoid future confusion when [she] enrolls the children in [school] and extra-curricular activities." In addition, Karyn noted that hyphenating the children's surnames would "allow the children to appreciate and enjoy their cultural heritage," since " 'Piegari' is Italian and 'Crider' is Scot-Irish." And, she continued, since "the children are still young"—currently they are ages four, two, and two (the latter two are twins)—changing their surnames would "not cause [them] any confusion" and would "not affect [their] involvement in school and the community."

¶ 4    Alexander filed a response in which he asserted that it was *not* in the children's best interests to hyphenate their surnames. In addition, Alexander noted that Karyn, rather than waiting for the court to rule on her name-change petition, had "already taken it upon herself to unilaterally hyphenate the children's surnames in public documents." One of the children had been hospitalized and underwent surgery, and Karyn set up a web page for the child on www.caringbridge.org, under the name "Piegari-Crider." Attached to Alexander's response was a copy of an image of the web page. Alexander asked for an order barring Karyn from hyphenating the children's surnames on any official document in the future.[1]

¶ 5    The trial court held a hearing on Karyn's petition. The court noted that, under section 21-101, it was required to consider, for each child, "all relevant factors," including: (1) the parents' wishes; (2) the child's wishes; (3) the child's "interaction and interrelationship" with his or her family; and (4) "[t]he child's adjustment to his or her home, school, and community." *Id.* The court further noted that the burden of proof in such cases is a high one, as the statute clearly states that a name-change order "shall be entered as to a minor *only* if the

_____

[1]Both Alexander's response and the CaringBridge web page refer to a child named "N.P." There is no other mention of an "N.P." in the record, and if "N.P." is a nickname for one of the parties' children, it is unclear to which child it refers. Since both parties agree that "N.P." is a reference to one of the children, we merely note the discrepancy.

court finds by *clear and convincing evidence* that the change is *necessary* to serve the best interest of the child." (Emphases added.) *Id.*; see also *In re Tate Oliver B.*, 2016 IL App (2d) 151136, ¶ 30 (stating that "[b]ecause a change in the name of a child is a serious matter with far-reaching effects," section 21-101 permits such a change only in compelling circumstances). Despite this high burden, however, Karyn presented no evidence to the court and submitted no offers of proof at the hearing (though Karyn's attorney did reiterate Karyn's "strong desire" to see the children's names hyphenated).

¶ 6    As noted, the trial court denied Karyn's name-change petition and entered an order enjoining her from hyphenating the children's surnames on any "official document." The court indicated that its injunction included, but was not limited to, "school records and medical records." The court stated that it was "fair to say what [the order] covered" and that it hoped Karyn "would respect the [c]ourt's decision" and would "not do anything that's going to place her at risk *** of having to come back in and answer to the [c]ourt." Karyn's counsel did not object, and he indicated that Karyn understood the court's admonition.

¶ 7    Karyn appeals. Although Alexander contends that we do not have jurisdiction to hear Karyn's appeal, we plainly do under Illinois Supreme Court Rule 307(a) (eff. Jan. 1, 2016), which provides for the interlocutory review of an order granting an injunction (which the trial court's order plainly is, since it affects the parties in their "everyday activit[ies]" apart from the underlying litigation). See *In re A Minor*, 127 Ill. 2d 247, 262 (1989). And, our jurisdiction to review the injunction pursuant to Rule 307(a) naturally also brings before us the portion of that same order that denied Karyn's name-change petition. See, *e.g.*, *In re Marriage of Presson*, 102 Ill. 2d 303, 308 (1984) (reviewing both an injunction and a name-change order on the merits).

¶ 8    We first turn our attention to the underlying order, denying Karyn's petition. With respect to changing the children's surnames, we note that "the consistent use of a single name is important to the child's emotional development" (*id.* at 313) and that, as with any other best-interests determination, the trial court's decision will not be lightly undone. See, *e.g.*, *In re Tate Oliver B.*, 2016 IL App (2d) 151136, ¶ 30. Karyn's appellate brief is largely a repackaging of the arguments she unsuccessfully presented to the trial court. Added to those arguments is Karyn's speculation that hyphenating the children's surnames would be "less disruptive" than placing her maiden surname first, as she could have requested. But what Karyn could have asked the court to do *vis-à-vis* the children's surnames is irrelevant. The question is whether she presented clear and convincing evidence that the name change she *did* request was *necessary* to serve the best interest of *each* child. See 735 ILCS 5/21-101 (West 2014). And, since Karyn presented no evidence or offers of proof to the trial court on that point, our review—under the highly deferential manifest-weight-of-the-evidence standard (*In re Tate Oliver B.*, 2016 IL App (2d) 151136, ¶ 30)—is made that much easier. The trial court's decision denying Karyn's name-change petition was *not* against the manifest weight of the evidence.

¶ 9    We note that, in her appellate brief, Karyn conflates parenting time with parental decision-making responsibilities when she states that she, as the parent "who exercises approximately 80% of the parenting time with the children, is the parent who will be *responsible* to enroll the children in curricular and extra-curricular activities." (Emphasis added.) We reject that assertion outright. Compare 750 ILCS 5/602.7 (West Supp. 2015) (parenting time) with 750 ILCS 5/602.5 (West Supp. 2015) (significant decision-making

responsibilities). Pursuant to the parties' parenting agreement, although Karyn was allocated the majority of the parenting time, Alexander and Karyn share *equal responsibility* for significant decision making on the children's behalf, which includes the children's enrollment in school as well as their participation in extra-curricular activities. See 750 ILCS 5/602.5(b)(1), (b)(4) (West Supp. 2015). Karyn's blatant attempt to transmogrify her greater share of parenting time into a position of power concerning the children's surnames, and without any acknowledgement or appreciation of Alexander's equal share of decision-making responsibility, misrepresents the parties' parenting agreement, misapplies the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2014)), and is *not* well taken. We emphasize that whether it is Karyn, Alexander, or the two of them who ultimately "enroll[s]" the children in school or in a given activity has no bearing on each parent's equal right to make significant decisions concerning the children.

¶ 10 We need not directly address the injunction separately, since Karyn fails to directly address it separately in her appellate brief. *Cf.* Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("[p]oints not argued are waived"). Nevertheless, forfeiture is a limitation on the parties, not the court, and the injunction itself is squarely at issue; after all, it is the jurisdictional hook for this appeal. On this record, we find that the injunction both was justified by the evidence (specifically, by the tone of Karyn's petition and by the way she set up the CaringBridge web page) and was appropriately tailored to the circumstances of this case. In *Presson*, our supreme court established a rule that "an order enjoining the custodial parent *** from changing [a child's] name" must be limited to preventing that parent from changing the child's name "in any legal proceeding or using any other name in official records or membership applications or records." *Presson*, 102 Ill. 2d at 313-14. In the age of social media, what constitutes an "official record[ ]" (*id.*) is certainly debatable. Nevertheless, the injunction carefully adhered to the rule laid out in *Presson*, and its additional comments set forth the order's limited scope. See generally *In re J.S.*, 267 Ill. App. 3d 145, 147-48 (1994). Given the circumstances, the injunction is a justified prior restraint on Karyn's alleged "right" to refer to her children, potentially to their detriment, by some extra-legal surname. See *Presson*, 102 Ill. 2d at 313-14. Accordingly, the trial court did not abuse its discretion when it enjoined Karyn from doing so.

¶ 11 For these reasons, we affirm the order of the circuit court of Du Page County denying Karyn's petition to alter the children's surnames and enjoining her from unilaterally doing so in any official document.

¶ 12 Affirmed.