CLINTON *v.* MORROW.

4-9759                                                   247 S. W. 2d 1015

Opinion delivered April 14, 1952.

Rehearing denied May 12, 1952.

[1] See *Reynolds* v. *Ashabranner,* 212 Ark. 718, 207 S. W. 2d 304.

*Gean & Gean,* for appellant.

*Kincannon & Kincannon, Warner & Warner* and *Lem C. Bryan,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, Carl C. Clinton, and appellee, Mary Lou Morrow, were formerly husband and wife. Two children were born of their marriage, a boy named Chris Costello Clinton, and a girl, Judith Lynn Clinton. On July 30, 1949, appellee was granted a divorce from appellant on grounds of cruel treatment and general indignities and she was awarded custody of the two children subject to appellant's right of visitation at all reasonable times. Appellee was also awarded $50 a month for her support and $100 a month for support and maintenance of the children. An agreed settlement of their property rights was incorporated in the decree.

Appellee married A. P. Morrow about six months after the divorce decree and the appellant married again about a month later. A boy was born of appellant's second marriage and given the name of Carl Charles Clinton. The monthly support payments of $50 to appellee ceased upon her marriage to A. P. Morrow.

On September 19, 1951, appellant filed a motion in the original divorce suit alleging changed conditions since rendition of the decree resulting from the subsequent marriages of the parties and asking that the monthly support payment of $100 for the children be reduced to $85. Appellant also alleged that he had not been able to visit the children "except on the average of about once every two weeks" because of "various excuses" given by appellee and that the court should fix some definite time of visitation. The motion further alleges: "That the plaintiff has wrongfully caused said children

to be enrolled in the public schools under the name of Morrow, which is illegal and improper and detrimental to said children, and is done for the purpose of destroying and impeding the affections of said children toward their natural father, and this defendant is entitled to an order of this court directing said children to be enrolled in the public schools under their correct name.''

The response of appellee contained a general denial and asserted that the allowance for the support of the children should be increased to $125 per month. Appellee admitted that she had caused the two children to be registered in school under the surname, Morrow, but asserted that such action was taken solely for the welfare and best interest of the children and without malice toward appellant or any attempt to estrange the children from him. Appellee also alleged that the repetition and similarity of the initials and name of their son with those of his father, grandfather, and half-brother, born of appellant's second marriage, had resulted in great confusion, inconvenience, disadvantage and embarrassment to the children.

This appeal is from an order denying the motion of appellant. The court decreed that the monthly payments for support of the children remain at $100; that appellant's right of visitation with the children at all reasonable times should stand as fixed in the original decree; and that it was for the children's best interest to use the surname of their stepfather.

We find no abuse of discretion in the chancellor's refusal to reduce the monthly payments for support of the children from $100 to $85. Appellant argues that appellee failed to prove that more than $85 a month was necessary for the children's support. It must be assumed that the chancellor correctly fixed the allowance at $100 in the original decree and the burden was on appellant to prove such changed circumstances as to render the amount so fixed excessive.

Appellant also argues that the increased expenses of supporting his present wife and their child has made it impossible for him to accumulate any savings or to

meet certain obligations. The evidence reflects that appellant is engaged in the retail furniture business as a partner with his father, mother, and brother-in-law. Each of the partners draws $350 salary per month which is charged out of business profits at the end of the year. This is an increase of $50 per month over appellant's drawing account at the time of the original divorce decree. Appellant testified that "very little" surplus profits remained after deducting the several drawing accounts. Although he did not know the net profits of the business for 1950, he thought the taxable net income returned by him for that year was approximately $5,000 and that he gave that amount as his expected income in his declaration for 1951. He admitted that the children's attendance at school would require an increase in expenses of their maintenance. We cannot say that the chancellor's finding on this issue is against the preponderance of the evidence.

As to appellant's contention that the court erred in refusing to fix a definite time for visitation of his children or to require appellee to designate such fixed time, little need be said. The evidence does not show any unreasonable restrictions on appellant's right of visitation. When asked to fix dates and hours of visitation which he preferred, appellant stated that it would be difficult to set a definite time and expressed a preference to "leave it open." The chancellor should not be censured for failure to do something that appellant himself deemed inadvisable and unreasonable.

Appellant's contention that the chancellor erred in refusing to require appellee to register the children in school under his surname presents a more serious question. At the time of the trial the age of the boy was six and one-half years and the girl five and one-half years. In September, 1951, the boy entered public school while the girl was in kindergarten and both were registered in the surname, Morrow. Prior to their entry in school the children had experienced embarrassment and worry because their name was different from that of their mother, had begun to use the Morrow name and were known to their playmates as the Morrow children.

The boy's name was Chris Costello Clinton. His father, the appellant, is named Carl Costello Clinton. Appellant's father is named Costello Cowen Clinton, and appellant's eight-month-old son by his second marriage is named Carl Charles Clinton. The evidence discloses that this multiple similarity of names and identity of initials caused considerable confusion and certain disadvantages. Before the divorce the parties encountered difficulties arising out of mistakes in store accounts because of the identity of appellant's initials with those of his father. Although appellant was not a "Junior", this appellation was added to his name in order to avoid such confusion. It is not unreasonable to assume that the confusion would become greater in the case of the child of the parties if he is required to use the same surname and initials of his father, grandfather, and half-brother.

In a written opinion filed by the chancellor he stated that the primary consideration on the change of name issue was the best interest of the children. He further stated: "The children are not responsible for the situation in which they find themselves. The responsibility must rest upon the shoulders of petitioner in this case since he was responsible for the divorce granted his wife in 1949. Proof in the case shows that considerable confusion arose on account of there being so many Clintons whose initials were 'C. C.'—the same name of which they probably are, and should be proud, and were attempting to perpetuate. When the mother married Mr. Morrow, the children could not understand why their names would not become Morrow also. It became a situation in which they were confused and embarrassed. The name 'Morrow' is highly reputable and esteemed in this community. Mr. Morrow and his father are well known, successful men of high repute. The parents of petitioner, Mr. Clinton, are also people of high repute in the community."

The general rule on this question is stated as follows in 38 Am. Jur., Names, § 28: "In the absence of a statute to the contrary, a person may ordinarily change

his name at will, without any legal proceedings, merely by adopting another name. He may not do so, however, for fraudulent purposes. In most jurisdictions, a change of one's name is regulated by statutes which prescribe the proceedings by which such change is to be accomplished. These statutes merely affirm, and are in aid of, the common-law rule. They do not repeal the common law by implication or otherwise, but afford an additional method of effecting a change of name." It seems to be equally well settled that an application to change the name of an infant should be granted only where to do so would be in the best interest of the child, 65 C. J. S., Names, § 11 b.

Our statute (Ark. Stats. § 34-801) empowers circuit and chancery courts to change the name of a person on proper application and a showing of good reasons therefor. This statute does not destroy or modify the common law right to change one's name and should be considered as in aid of, and supplementary to, such right.

Appellant relies on several cases arising in New York under a statute which provides that the name of an infant under sixteen years of age may be changed upon petition of both parents, if living. In cases involving infants under sixteen years of age the New York courts have consistently construed this statute to mean that the consent of both parties is necessary before a change may be made either by court order or extra-judicial means. See, *In re. Epstein,* 121 Misc. 151, 200 N. Y. S. 897; *Matter of Cohn,* 181 Misc. 1021, 50 N. Y. S. 2d 278; *Schoenberg* v. *Schoenberg,* 57 N. Y. 2d 283; *Nitzberg* v. *Board of Education of the City of New York,* 104 N. Y. S. 2d 421. In cases where the infant was sixteen years of age, or older, the New York courts have sanctioned a change of the infant's name despite the objections of the natural father where the welfare of the infant will be advanced by the change. *In re. Horn,* 21 N. Y. S. 2d 453; *Application of Harris,* 43 N. Y. S. 2d 521.

In other states where the statute involved does not require the consent of both parents, the courts have per-

mitted the change of a minor child's name or a use of the stepfather's surname in circumstances similar to those involved in the instant case. In *Bruguier* v. *Bruguier,* 12 N. J. Supr. 350, 79 A. 2d 497, the mother obtained a divorce from the father and both parties subsequently married again. The court held that their minor daughter's use of the surname of her stepfather was proper, saying: ''As to defendant's motion that his daughter desist from using and assuming the name Yvonne Williams, the motion must be denied. There is nothing in the common law prohibiting one from taking another name, if he so desires. In the absence of a statute to the contrary a person may ordinarily change his name at will without any legal proceedings simply by adopting another name. 38 Am. Jur. page 610. The ordinary rules of minority do not limit the right. Our statute provides a means for a judicial process to effect a desired change to provide a permanent record, and, of course, a minor desiring to take advantage of that statute must appear by guardian or next friend.'' The same result was reached in *Binford* v. *Reid,* 83 Ga. App. 280, 63 S. E. 2d 345, where it was held that the trial court did not abuse his discretion in granting the application of a mother to change the infant son's surname from that of the divorced father to that of the mother's second husband.

We have no statute requiring the consent of both parents to change the name of an infant. Under the facts here presented, we hold that the question of the right and propriety of the children's use of the surname of their stepfather is one that rests in the sound discretion of the chancellor. In view of the natural and commendable desire of the father to have his children bear and perpetuate his name, this discretion should be exercised with the utmost caution and such use or change should not be sanctioned unless it is for the best interests of the children. In this case the parties reside in the same community as the chancellor who observed the witnesses as they testified. His conclusion that the interests of the children would be best served by the action taken was reached after careful analysis and consideration of

all the evidence and the conflicting interests involved. We cannot say that his action amounted to an abuse of discretion.

Affirmed.

ED. F. McFADDIN, Justice (dissenting). I dissent from that portion of the opinion which allows the mother of these children to change their surname from Clinton to Morrow. The Chancellor found that the Clinton name is an honored and respectable name in Fort Smith. There is, therefore, no good reason for changing the surname of these children to that of their stepfather—Morrow.

These two little ones are the children of Carl C. Clinton. He is contributing $100 per month to their support. As long as he is paying for the support of his children, certainly he should have them carry his family name.

In allowing Mrs. Morrow to change the surname of these children, I insist that a dangerous precedent is being set by the Chancery Court, in the first instance, and this Court on appeal. I say that this is a precedent that will come back later to plague not only Mrs. Morrow, but the Courts which have allowed her to encourage the children to violate the Commandment which says "Honor thy father . . ." No amount of judicial legerdemain can conceal the fact that, in changing the surname of these children, the mother and the Courts are thereby encouraging the children to dishonor the name of the man who gave them paternity, and who is supporting them.

Mr. Justice WARD joins in this dissent.