Renee MATHEWS *v.* Rodney OGLESBY

CA 96-1187 · 952 S.W.2d 684

Court of Appeals of Arkansas
Division II
Opinion delivered October 22, 1997

*Linda D. Shepherd, P.A.*, for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Bruce D. Eddy*, for appellee.

JOHN F. STROUD, JR., Judge. Appellant Renee Mathews appeals from a chancery court decree changing her child's surname to that of the child's father, appellee Rodney Oglesby. She argues that, in making the ruling, the chancellor did not consider the child's best interests. We agree and reverse and remand for further proceedings.

Appellant and appellee are unmarried. On December 13, 1995, appellee filed a petition in Pulaski County Chancery Court alleging that appellant was about to deliver a child, Joshua Levi Mathews. Appellee asked that he be declared the child's father, that he be required to pay child support, that custody be vested in appellant, that the child's birth certificate be amended to show him as father of the child, and that the child's surname be changed to Oglesby. The child was born the next day.

On February 16, 1996, a temporary hearing was held wherein custody was awarded to appellant. Appellee was given visitation rights, was encouraged to seek employment that provided health coverage, was ordered to pay child support, was ordered to obtain a child safety seat, and was directed that, should he obtain a tax refund, he apply it to a $360.00 child-support arrearage. All other issues in the case were reserved for the final hearing.

The final hearing was held on May 17, 1996. The parties stipulated that appellee was the father of the child and that his name could appear on the birth certificate as the father of the child. However, appellant opposed any change in the child's surname. The chancellor therefore heard evidence on that issue in the form of testimony by appellant, appellant's mother Diana Mathews, and appellee. Appellant testified that she discovered she was pregnant in April 1995. She contacted appellee, who expressed surprise at the news. Two weeks later, appellee told appellant he was tired of her and didn't want anything else to do with her. He further encouraged her to have an abortion. About one month later, appellee reestablished communications with appellant. However, he refused to accompany appellant to her doctor appointments until later in her pregnancy when he accompanied her to two ultrasound appointments. After one of the appointments, he told appellant that if she did not put his name on the birth certificate, he wanted nothing to do with her. Contact between them ceased for eight weeks.

Appellee was present at the birth of the child. According to appellant, he did nothing during her pregnancy to offer financial support, even though he had purchased, in May of 1995, a truck that carried $400.00 per month payments. Further, appellee was behind in child support and did not show up at the first two visitations scheduled by the chancellor at the February hearing. According to appellant, she did not want her child's surname changed because his social security number, his medical and pharmaceutical records, and his Medicaid were all in the name of Mathews. She also expressed discomfort at the prospect of having a last name different from her child. However, upon cross-examination, appellant stated that if she were to get married sometime in the future, she would not be reluctant to change her name to her husband's name. Diana Mathews corroborated her daughter's testimony regarding appellee's missed visitation and child-support arrearages.

In appellee's testimony, he admitted that he had not purchased a child safety seat as ordered by the chancellor and that he had used his $900.00 tax refund to pay bills instead of paying child support. He also admitted that he was behind on child sup-

port and that he had initially encouraged appellant to have an abortion.

During appellant's testimony, before the testimony of Diane Mathews and appellee was offered, the chancellor made the following comment:

> It has been this Court's policy to change the last name to' that of the father unless it is a situation where the child is, let's say, ten or eleven years old, been in school for a number of years, everybody knows that child by that last name. We're talking about an infant here. So in all likelihood the Court is going to change the last name.

At the close of the hearing, the chancellor changed the child's name without further comment.

■ ■ Arkansas Code Annotated § 20-18-401(f)(3)'(Supp. 1995) provides that, when the paternity of a child is determined by a court of competent jurisdiction, the name of the father and the surname of the child shall be entered on the birth certificate in accordance with the finding and order of the court. However, that statute is not interpreted to mean that the child's surname should necessarily be that of the father. *McCullough v. Henderson*, 304 Ark. 689, 804 S.W.2d 368 (1991). Instead, the decision to change or not change the child's surname should be "the product of the chancellor's informed discretion, exercised in response to what is deemed to be in the best interests of the child." *Id.*; *see also Reaves v. Herman*, 309 Ark. 370, 830 S.W.2d 860 (1992). When the best interests of the child are at stake, the chancellor should look into the peculiar circumstances of each case and act as the welfare of the child appears to require. *Clark v. Reiss*, 38 Ark. App. 150, 831 S.W.2d 622 (1992). Here, the chancellor followed a "policy" that took but one factor into consideration, i.e., the age of the child. The mechanical application of such a policy precludes consideration of the full panoply of factors inherent in determining the best interests of a child.

■ ■ On *de novo* review of a fully developed chancery record, where we can plainly see where the equities lie, we may enter the order that the chancellor should have entered. However, we may decline to do so if justice will better be served by a remand.

*Bradford v. Bradford*, 34 Ark. App. 247, 808 S.W.2d 794 (1991). Since the chancellor announced her policy regarding name changes in the midst of appellant's testimony, the parties' presentation of evidence may have been affected. Therefore, to ensure that the evidence is fully developed on this issue, we reverse and remand for a further hearing to determine if the name change is in the best interest of the minor child. In light of our holding, we need not address appellant's contention that the chancellor's policy violates her constitutional guarantee of equal protection.

■ Finally, appellant urges us to adopt a presumption in favor of the surname chosen by the child's custodial parent. *See generally Gubernat v. Deremer*, 140 N.J. 120, 657 A.2d 856 (1995). We decline to do so. When the best interests of the child are involved, the chancellor should make his or her decision on an individualized basis, not on the basis of a presumption. *Fox v. Fox*, 31 Ark. App. 122, 788 S.W.2d 743 (1990). *See also* Note, *Like Father, Like Child: The Rights of Parents in Their Children's Surnames*, 70 VA. L. REV. 1303, 1314 (1984).

Reversed and remanded.

PITTMAN and NEAL, JJ., agree.