114 So.2d 33 (1959)
APALACHICOLA NORTHERN RAILROAD COMPANY, a corporation organized and existing under and by virtue of the Laws of the State of Florida, Appellant,
v.
Doris TYUS, Appellee.
No. A-303.
District Court of Appeal of Florida. First District.
June 2, 1959.
Rehearing Denied August 3, 1959.
*35 Hall, Hartwell & Douglass, Tallahassee, for appellant.
Clyde W. Atkinson, Tallahassee, for appellee.
STURGIS, Chief Judge.
This is an appeal from a railroad crossing accident case in which the jury returned a verdict of $53,230 in favor of the widow of the driver of a truck which collided with one of the defendant company's trains. The defendant, appellant here, contends: (1) That the evidence showed that the negligence of the plaintiff's decedent was the sole proximate cause of the accident; (2) that plaintiff's attorney was guilty of making improper and prejudicial remarks during closing argument which denied to defendant a fair and impartial trial.
The evidence shows that the plaintiff's decedent was driving an eight-ton cabin type truck and trailer loaded with fourteen tons of bricks in an easterly direction on a highway near a small unincorporated community about 8:00 o'clock on a clear winter morning. Decedent was familiar with the crossing, having passed over it frequently as part of his job route. On the morning of the unfortunate accident he approached the crossing at a speed of between 35 to 50 miles an hour. Although there were signs indicating a crossing posted at 400 feet and 200 feet from the crossing, there is no evidence that plaintiff's decedent slowed up, accelerated his speed or applied his brakes as he approached the tracks.
The engineer's testimony, which was corroborated by the fireman, brakeman, flagman, and conductor, was to the effect that the train was proceeding from the north in a southerly direction on a slight downgrade at between 15 and 20 miles an hour, that the whistle was blown at the customary distance of about 600 feet from the crossing and the bell was rung at the same time. The engineer testified that he caught a glimpse of the truck which the decedent was driving between some trees and a house located alongside the track when the train was about 100 feet from the crossing, and that in "just a matter of a couple of seconds, it popped up" in front of him, whereupon he turned the whistle cord loose, shut off the throttle, and braced himself behind the control stand but not before it was too late to avoid the collision.
Since this is an accident involving a railroad company, F.S. Section 768.05, F.S.A. applies. Under the statute the plaintiff need only introduce evidence showing injury or death caused by the defendant, whereupon a presumption of negligence on the part of the company arises. However, this rebuttal presumption disappears in the face of evidence showing that the railroad's agents exercised all ordinary and reasonable care and diligence and it then becomes plaintiff's burden to establish that the railroad company was guilty of negligence in failing to observe some duty it owed the public or person injured. Powell v. Gary, 146 Fla. 334, 200 So. 854; Seaboard Air Line Ry. Co. v. Myrick, 91 *36 Fla. 918, 109 So. 193. In attempting to forestall proof that defendant's agents exercised the proper degree of care, plaintiff produced evidence in opening to the effect that the engineer did not blow his whistle, that he was running the train too fast for the environment, and as to the latter, that the plaintiff's line of vision was obscured by a tree, house, and undergrowth in the defendant's right of way. As to whether a proper warning was given, all of the defendant's and most of the plaintiff's witnesses testified that the whistle was blown at least a few seconds before the accident. The witnesses who attempted to establish that the whistle was not blown testified merely that they "didn't hear it blow." Our supreme court has consistently held that negative testimony will not make an issue in the face of positive testimony that the signals were given. Powell v. Gary, 146 Fla. 334, 336, 200 So. 854.
The evidence is uncontradicted that the speed of the train was between 15 and 20 miles an hour. Although it is not argued that this was excessive per se, appellee contends that the train was operated too fast for a downhill load of 3,000 tons of pulpwood, basing this on a statement of the engineer that he drove past the crossing "not expecting to stop." As the train was proceeding at a lawful rate of speed, that fact does not constitute actionable negligence. F.S. Section 320.47, F.S.A. imposes the duty on the engineer to blow the train's whistle when approaching a crossing in an unincorporated community. It is well established that a train has the right of way and is not required to be retarded until it becomes apparent that one approaching the track is not going to stop. McAllister v. Tucker, Fla., 88 So.2d 526. The evidence is clear that the engineer met this duty by applying his brakes the moment he saw the truck was not going to stop.
Appellee contends that the proofs are susceptible of the conclusion that the railroad was negligent in failing to exercise due care in view of the condition of the crossing. The railroad right of way extended some 60 feet on either side of the railroad track. A house and some trees were located about 30 feet from the right of way in an area over which the defendant had no control. The testimony regarding the height of the underbrush along the railroad right of way ranged in estimation from 2 to 5 feet. There is uncontradicted testimony that the right of way had been cleared by the defendant some 10 or 12 days before the accident. Assuming the underbrush had grown up or was not properly cleared, the testimony is that the height of the engine and cars of the train was approximately 15 feet, and while there is no direct testimony as to the height of the truck's cabin except that it was of standard size, the clear inference  assuming the underbrush had the testified maximum height of 5 feet  is that there was a difference of several feet between the level of the truck operator's eyes and the top of the train. This evidence, coupled with the fact that the decedent was sitting in the cabin of a high trailer-truck, necessarily precluded a finding that the train was obscured by the underbrush. Upon careful analysis of these factors we are compelled to the conclusion that the jury could not under the evidence find that the driver's view was obstructed by the underbrush as he approached the crossing. Conversely, it is apparent that the only conclusion available from the evidence is that he had an unobstructed view in the direction of the oncoming train and that he could and would have seen it had he exercised the caution required of him in approaching the crossing. The railroad has a right to assume that one crossing its tracks will at least look to see if there is an approaching train and that he will not plunge into its pathway. Atlantic Coast Line Ry. Co. v. Timmons, 160 Fla. 754, 36 So.2d 430. It is held that it is as much the driver's duty to ascertain if a train is approaching as it is the duty of the railroad company to give warning of an approaching train. Powell v. Gary, 146 Fla. 334, 200 So. 854; Covington *37 v. Seaboard Air Line Ry. Co., 99 Fla. 1102, 128 So. 426.
But assuming, per argumenti, that plaintiff's view was obstructed, the Florida Supreme Court holds that when one attempts to drive an automobile over a railroad crossing with which he is familiar and his view of the railroad track is so obstructed that an approaching train cannot be seen, and he fails to stop and look and listen or take such precautions for his safety as are reasonably required by the existing conditions and circumstances, those circumstances and acts constitute such negligence as will preclude recovery for his death unless some appreciable negligence of the railroad company's agents proximately contributed to his death, in which case the comparative negligence statute would apply. Florida East Coast Ry. Co. v. Townsend, 104 Fla. 362, 140 So. 196, 143 So. 445. We have carefully reviewed the record but fail to find proof of any "appreciable negligence" on the part of the defendant company.
It is with reluctance that an appellate court reverses a jury verdict. But the verdict must have a rational predicate in the evidence and cannot rest on mere probability, guess, or arbitrary action. Golden v. Morris, Fla., 55 So.2d 714. The facts show that the operators of the train were exercising every precaution imposed on them by law, while decedent exercised no precaution whatever for his safety. Decedent knew he was approaching the railroad crossing; it was broad daylight; he was confronted with warning signs; and he had traveled the road frequently. Yet it is clear that he failed to observe the most elementary duty imposed on him for his safety, to look and listen and, if need be, stop in order to avoid the accident. When the negative, speculative and inconclusive evidence is disregarded it is clear that this unfortunate mishap was the sole result of the decedent's own negligence. For that reason a directed verdict should have been entered for the defendant at the close of all the evidence.
In view of our conclusions it is unnecessary to labor at length the second ground of appeal relating to prejudicial remarks of counsel made during closing argument. We feel obliged, however, in the interest of a full review to observe that many statements made by plaintiff's counsel during summation were improper, highly prejudicial, and altogether unwarranted. Among these was his reference to the defendant as a corporation which has snuffed out another life in the pursuit of the almighty dollar, that defendant was investigating the case before decedent's body was cold, that it had no respect for life, and that a human being was unimportant, dead or alive, unless he contributed something to the fortune and future of the railroad. These remarks are but a few of those of a prejudicial nature shown by the record. Although a great leeway is permitted in the arguments, counsel may not indulge in abuse or resort to a patently inflammatory appeal to prejudice. Standing alone, the stated remarks constitute grounds for reversal, notwithstanding the effort of the trial court to remove their effect by instructing the jury to disregard them. Seaboard Air Line Ry. Co. v. Strickland, Fla., 88 So.2d 519; Tampa Transit Lines, Inc. v. Corbin, Fla., 62 So.2d 10; 53 Am.Jur. 501-03.
For the reasons stated, the judgment appealed from is reversed and the cause remanded with directions to enter judgment for the defendant.
THORNAL, Associate Judge, concurs.
CARROLL, DONALD K., J., concurring specially.
CARROLL, DONALD K., Judge (concurring specially).
I concur that the judgment should be reversed, but believe that the ends of justice *38 under law would be better served by awarding a new trial so that the plaintiff may have an opportunity to present at the new trial additional evidence, if such may then be available to her, rather than foreclosing her from attempting to recover for her husband's death through the entry at this time of a judgment for the defendant.

On Petition for Rehearing Denied.
STURGIS, Chief Judge.
Appellee's extensive petition for rehearing primarily rehashes the evidence according to the pleader's interpretation of it. Having unanimously concluded that it is insufficient to support a verdict for plaintiff, that phase requires no further comment.
The petition correctly points out that in referring to the prejudicial remarks of appellee's counsel, which we held to constitute reversible error, our opinion did not employ the exact language used by counsel, which was as follows:
"It would have cost them very little to have put some kind of signals there so that the man, when he was going across that track, would have had knowledge of the fact that the train was coming out from this blinding end of the railroad; but they didn't value the life of somebody crossing that track enough to do it. * * *
"In other words, what is another man unless he can be some gain to that corporation, knowing its enterprise? What is a mere human being, dead or alive, unless he can contribute something to the fortune and future of the Apalachicola Northern Railroad?"
We feel that the implications of these remarks are fairly summarized by the appellant's brief, to which appellee made no exception in his reply brief, and from which we adopted the language used in the opinion.
Appellee's petition insists that as an alternative to affirmance of the judgment a new trial should be awarded. This accords with the conclusion expressed by CARROLL, J., in his concurring opinion, but is not advanced on the premise assigned for the conclusion, that is, to give plaintiff "an opportunity to present at the new trial additional evidence, if such may then be available to her." There is no suggestion in the record on appeal or in the petition for rehearing that there is now available to plaintiff any evidence that was not available on the trial. Under such circumstances we must conclude, as did the Supreme Court in Martin v. Sussman, Fla., 82 So.2d 597, 598:
"The only thing that would be accomplished by the re-trial of this cause would be a resubmission of the same undisputed facts to another jury for a re-evaluation of the evidence."
Again we point out that our reversal of this cause was based on a complete lack of competent evidence to support the verdict. It follows that the situation with which we are confronted is clearly distinguishable from that found in cases where reversal is based on the paucity rather than absence of evidence to support the verdict. Thus in Florida Publishing Co. v. Copeland, Fla., 89 So.2d 18, 20, a new trial was awarded because the verdict was "against the manifest weight of the evidence considered as an entirety." The words "manifest weight" as there used indicate that the record in that case contained some competent evidence of negligence, a factor absent in the case on review.
When a cause is reversed for lack of evidence, a new trial cannot be awarded on the theory that some additional evidence might have been available at the former trial and will be presented on retrial, or that some such evidence may be found and will be presented on retrial, and that in either event there may be a different result upon the retrial. Absent very limited *39 exceptions which do not appear in this case, we indulge a conclusive presumption that the litigants have presented all available, competent, and material evidence supporting their cause; and failure to do so is at their election and risk. Any other rule would only lead to chaos.
It often occurs that following trial new evidence is discovered of such character that if presented at the trial would have likely produced a different result, or of such character as to require its consideration in order not to unduly prejudice the party against whom judgment was rendered, and in such cases a new trial will be awarded upon a proper showing. However, the procedural requirements to be followed by one desiring to be availed of such evidence are logically exacting, foremost among which is a showing that the existence of the evidence was discovered subsequent to the trial.
We adhere to our former disposition. See Atlantic Coast Line R. Co. v. Connell, Fla.App., 110 So.2d 80.
Rehearing denied.
THORNAL, Associate Judge, concurs.
CARROLL, DONALD K., Judge (dissenting).
I would grant the petition for rehearing and modify the Court's opinion by ordering a new trial instead of the entry of a judgment for defendant. Such a disposition seems more consonant with sound principles of the administration of justice. Though her evidence was insufficient at the trial as shown by the record on appeal, the appellee ought to have an opportunity to produce sufficient additional evidence to sustain a verdict in her favor at a new trial. We cannot say, nor could in fact anyone say, as a matter of law that no such additional evidence will then be available. Under such circumstances, it seems to me, the ends of justice are better served by ordering a new trial.