860 So.2d 1046 (2003)
Jody McKAY, f/k/a Jody Pate, Appellant,
v.
Jason HAIKEY, Appellee.
No. 5D03-1208.
District Court of Appeal of Florida, Fifth District.
December 5, 2003.
Nancy Y. Smith of Brinson, Smith & Smith, P.A., Kissimmee, for Appellant.
*1047 No appearance for Appellee.
PLEUS, J.
In this paternity action, the mother, McKay, appeals a final judgment changing the child's surname from McKay to that of the father, Haikey. She argues that the trial court violated her procedural due process rights by allowing more than one hearing on the name change issue. On the merits, she argues that the trial court abused its discretion in changing the child's surname without finding that the change was in the child's best interest. Haikey did not make an appearance in this appeal. We reverse because the father failed to prove the name change was in the child's best interest.
Jody McKay and Jason Haikey, an unmarried couple, conceived a child, Kase Gregory McKay. When Kase was born, his parents were no longer dating or speaking to each other. McKay did not inform Haikey about the birth. Immediately upon giving birth, McKay named her son Kase Gregory McKay and completed the necessary paperwork for his birth certificate. Haikey learned of his son's birth the following day. Haikey visited the hospital but questioned whether he was the father and asked for a paternity test.
About two weeks later, Haikey filed a petition to determine paternity in which he admitted being Kase's father and also asked that Kase's surname be changed to Haikey. At a hearing on September 27, 2002, the trial court orally ruled that the child's name would not be changed.
On October 9, 2002, Haikey filed a motion to supplement the testimony, alleging that he was pro se at the first hearing and did not adequately present sufficient evidence. Now represented, Haikey wished to present additional testimony on the name change issue. On October 22, 2002, the court denied Haikey's motion to supplement the testimony. The court reasoned that neither in the prior hearing nor in the motion to supplement the testimony had Haikey demonstrated why the child's name was detrimental and why changing it would be in the child's best interest. However, the court granted Haikey 20 days to file a new motion with "legally sufficient testimony."
Twenty-one days later, Haikey filed a Verified Response to Order Regarding Rehearing. He argued that the name change would be in the child's best interest because the mother used her former married name, Pate, instead of her legally-restored name, McKay. Consequently, Haikey argued that:
If the Mother goes by the surname "Pate" and/or remarries and takes her new Husband's name, then the minor child of these parties will not be known by either parent's surname. Hence the child's surname would be different from both parents'.
The court granted rehearing on the name change issue. At the second hearing, McKay's attorney objected to the need for another hearing, arguing that the court had correctly decided the issue on October 22, 2002, and that Haikey had failed to timely move for rehearing. The court overruled the objection.
Haikey testified that he believed changing the child's surname was in the child's best interest for the following reasons:
My grandfather only had two kids, one guy and one girl and it's up to me and my brother to carry on the name. And I think that heit would be in his best interest to carry on my name.
* * *
Because that way I know what my last name and he would know his last name. He doesn't know it now. He has no *1048 recollection of it, but Ms. McKayshe just recently changed her name and she will probably remarry and then her name will change again.
The trial court granted the name change, ruling as follows:
The Court is convinced that the name of the child was done by the Mother in anger towards the father or disagreement and not necessarily in the best interest of the child. The Father was ready and willing to go to the hospital if he had been informed of the Mother going to give birth. However he had to learn himself about the birth of the child and then went to the hospital and unfortunate comments were made by one or both parents which led to naming the child by the Mother's maiden name and lack of contact by the Father.
On appeal, McKay argues that the procedure employed by the trial court violated her procedural due process rights by giving Haikey repeated chances to raise the name change issue. The record shows that the court orally denied a name change on September 22, 2002. Twelve days later, Haikey filed a motion to supplement the testimony. The court again denied this motion, but gave Haikey 20 days to file a new motion with a more specific proffer of evidence. Twenty-one days later, Haikey filed a new motion which resulted in a new hearing and an order changing the child's name.
We are sympathetic to McKay's due process argument. At some point, due process demands that the court make a decision. Allowing the issue to be repeatedly reopened results in unnecessary expense and uncertainty for litigants. However, we cannot say the court went so far in this case as to constitute an abuse of discretion. Neither the court's oral pronouncement on September 22, nor its written order of October 22, constituted a final judgment of paternity. We therefore conclude that the trial court acted within its discretion in granting a rehearing on the name change issue prior to entering a final judgment of paternity.
On the merits, McKay argues that the trial court abused its discretion by granting the name change because Haikey failed to meet his burden of proving that the name change was in the child's best interest. We agree. The law on this issue is succinctly stated in Bardin v. State, Dep't of Revenue, 720 So.2d 609 (Fla. 1st DCA 1998), as follows:
This court, in Collinsworth v. O'Connell, 508 So.2d 744 (Fla. 1st DCA 1987), held that the change of a child's surname to that of the father, based only on a finding of paternity, is error. The Collinsworth court explained that a child's surname may be modified "`only where the record affirmatively shows that such change is required for the welfare of the minor.' This standard, emphasizing best interests of the child rather than parents, would accord effect to the same factors governing custody." Collinsworth, 508 So.2d at 747 (citations omitted). Section 382.013(3), Florida Statutes (1997), does not permit a change of surname based only on a finding of paternity. The Collinsworth court explained that the discretion of the trial judge in these cases must "be exercised on the basis of some evidence other than the parties' conclusory assertions...." The Collinsworth court further explained that in the absence of sufficient evidence to show that the name change would be in the best interest of the child, "the issue should ordinarily be resolved against the party having the burden of proof, the proponent of change." Collinsworth, 508 So.2d at 747.

*1049 Bailey, as the party seeking to change the child's surname, bore the burden of proof to show that the change would be in the child's best interest. Bailey, however, offered no evidence that a change in the child's surname would be in the best interest of the child. Accordingly, this portion of the order is reversed with instructions to reinstate the child's original surname. See also, Levine v. Best, 595 So.2d 278 (Fla. 3d DCA 1992) (holding, in an adjudication of paternity, that the standard to be applied in determining whether to change a child's surname is the best interest standard); Durham v. McNair, 659 So.2d 1291, 1292-93 (Fla. 5th DCA 1995) (holding, in a paternity action, that "[t]he selection and change of the child's surname from the name chosen by the mother must be based on the trial court's determination that renaming is in the child's best interests, and the record must affirmatively show such a name change is required for the welfare of the minor child."); Jones v. Roberts, 559 So.2d 429 (Fla. 4th DCA 1990) (holding that the trial court did not abuse its discretion in changing the surname of the child where the court made factual findings that the name change would be in the best interest of the child); Girten v. Andreu, 698 So.2d 886, 888 (Fla. 3d DCA 1997) (holding that the trial court abused its discretion in changing the surname of the child, and explaining that "[t]he mere fact that paternity has been established does not automatically entitle the father to insist the child be given his surname."); Lazow v. Lazow, 147 So.2d 12, 14 (Fla. 3d DCA 1962) (holding that a minor's surname may be changed "only where the record affirmatively shows that such change is required for the welfare of the minor.").
(Footnote omitted).
In the instant case, its was Haikey's burden to prove that changing the child's name was in the child's best interest. At the hearing, he gave two reasons why he thought the name change was in the child's best interest. First, he wanted to carry on his family name. But Haikey did not explain how carrying on the father's family name is in the child's best interest. This reason was insufficient under Girten, which held that changing the child's name solely because it was "customary to use the father's surname," could not sustain a name change. Second, Haikey wanted his child to know his last name. He feared that McKay would probably remarry and change her name again. While concern that a child may not have the same surname as either parent appears to be valid best interest factor, Daniel v. Moats, 718 So.2d 949 (Fla. 5th DCA 1998), the father's concern in the instant case was merely speculative. Thus, both reasons given by Haikey were insufficient to prove that the name change was in the child's best interest.
The reason given by the trial court was also insufficient. The trial court was "convinced that the name of the child was done by the mother in anger towards the father or disagreement and not necessarily in the best interest of the child." The court further explained that "unfortunate comments were made by one or both parents which led to naming the child by the mother's maiden name and lack of contact by the father." The court's reasoning is flawed for three reasons. First, the judge's finding is not supported by the evidence. The words exchanged between Haikey and McKay at the hospital the day after the their son was born did not lead to the naming of the child in anger. McKay had already named the child on the day of his birth. Second, McKay was entitled to name the child at birth pursuant to section 382.013(3)(c), Florida Statutes, which states, "If the mother is not married at the time of birth, the parent who will have *1050 custody of the child shall select the child's given name and surname." Clearly, the mother had custody and was entitled to select the child's name at birth. Third, the issue was not whether naming the child was in his best interest, but whether changing his name was in his best interest. In short, neither Haikey's reasons nor the trial court's reasons were sufficient to demonstrate that the name change was in the child's best interest.
Accordingly, we reverse. Remand for a new hearing is not warranted. In Bardin, the appellate court reversed a trial court order changing a child's name but declined to remand for a new evidentiary hearing, stating:
when a cause is reversed for lack of evidence, a new trial cannot be awarded on the theory that some additional evidence might have been available at the former trial and will be presented on retrial, or that some such evidence may be found and will be presented on retrial, and that in either event there may be a different result upon the retrial. As in very limited exceptions which do not appear in this case, we indulge a conclusive presumption that the litigants have presented all available, competent and material evidence supporting their cause; and failure to do so is at their election and risk. Any other rule would only lead to chaos.
Bardin, quoting Apalachicola Northern R. Co. v. Tyus, 114 So.2d 33, 38-39 (Fla. 1st DCA 1959). Instead, we remand for entry of an order restoring the child's given name, Kase Gregory McKay.
REVERSED and REMANDED.
PETERSON and ORFINGER, JJ., concur.