NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MICHAEL TERYL AIRSMAN,⁣ )
)
       Appellant, )
)
v. )     Case No. 2D14-4826
)
ERICA LEANNE AIRSMAN, )
N/K/A ERICA LEANNE CONKLIN, )
)
       Appellee. )
                          )

Opinion filed September 9, 2015.

Appeal from the Circuit Court for Collier
County; Joseph G. Foster, Judge.

Cynthia B. Hall of Silverio & Hall, P.A.,
Naples, for Appellant.

Erica L. Conklin, pro se.


LaROSE, Judge.

       Michael Teryl Airsman appeals a final judgment changing the surname of

his daughter, after petition by the child's mother, Erica Leanne Airsman, now known as

Erica Leanne Conklin, Mr. Airsman's former wife.[1]  We have jurisdiction.  See Fla. R.

---

       [1]For ease, we will refer to Mr. Airsman and Mrs. Airsman as "father" and
"mother," respectively.

App. P. 9.030(b)(1)(A). The change of surname is not supported by competent, substantial evidence that the child's best interests are served, or that the welfare of the child is at risk. Consequently, we reverse and remand.

A brief history is useful. The father and mother married in 2004. Their daughter was born in 2010. The father and mother divorced in 2012. Pursuant to a marital settlement agreement (MSA) incorporated into the final judgment of dissolution, the mother assumed primary parental responsibility for the daughter. The MSA gave the father only supervised visitation. The MSA, however, required the parties to foster and encourage feelings of affection and respect between the daughter and each parent.

At the time of the divorce, the mother retained her married name. In 2014, she petitioned the trial court to restore her maiden name, and she petitioned the trial court to change the child's surname to hers because the daughter's "family unit is comprised solely of the minor child and me." The mother alleged that the father was an absent father. She also alleged that "it is in [the daughter's] best interest to share the same surname as her custodial parent and sole caregiver."

At the time of an initial hearing on the petition, the father lived out of state. The trial court held a telephonic hearing, where the father objected to the name change. Although contradicted by the mother, he claimed that his lack of visitation or contact with his daughter was not voluntary; the mother allegedly thwarted his attempts to contact the daughter. Although the mother argued that the father was not paying child support, the MSA allowed him to pay child support "with the assistance of his parents." Child support payments were current.

The trial court granted the petition. But, after the father moved for rehearing, the trial court held a full evidentiary hearing. Following that hearing, the trial court entered final judgment granting the petition. The trial court concluded that "it is in the child's best interest to bear the same surname as . . . her sole caregiver and custodial parent." The father now urges us to reverse the final judgment because competent, substantial evidence failed to support the finding that the name change was in the best interest of or necessary for the welfare of the daughter.

We review the trial court's decision under an abuse of discretion standard. Coolidge v. Ulbrich, 733 So. 2d 1092, 1094 (Fla. 4th DCA 1999). The party seeking to change the child's name bears the burden of proof; conclusory assertions are insufficient. Cothron v. Hadley, 769 So. 2d 1148, 1148 (Fla. 5th DCA 2000). As we observed in Wilson v. Smith, 126 So. 3d 413, 416 (Fla. 2d DCA 2013):

> This court and others have held that the standard for changing a child's name is whether the change is in the child's best interests or is necessary for the welfare of the child. See Azzara v. Waller, 495 So. 2d 277, 278 (Fla. 2d DCA 1986) ("The Court should order a change of a minor's surname over the objection of one parent only where the evidence affirmatively shows that such change is necessitated by the welfare of the child."); Coolidge v. Ulbrich, 733 So. 2d 1092, 1094 (Fla. 4th DCA 1999) ("A child's surname should remain unchanged absent evidence that the change is necessary for the welfare of the child."); Hayhurst v. Romano, 703 So. 2d 1178, 1179 (Fla. 3d DCA 1997); Lazow v. Lazow, 147 So. 2d 12, 14 (Fla. 3d DCA 1992) ("To change the name of a minor . . . is a serious matter, and such action may be taken only where the record affirmatively shows that such change is required for the welfare of the minor."). The desires of the parents to have a "connection" with the child through the child's name do not guide this decision. See Azzara, 495 So. 2d at 278; Hayhurst, 703 So. 2d at 1179. Neither does the desire of one parent to distance him or herself from the other parent.

(Emphasis added.)

Also instructive is Chamberlin v. Miller, 47 So. 3d 381 (Fla. 1st DCA 2010). There, the father wanted his son to carry his family name, believing the child should share a father's surname, and because he feared the child would be teased if he did not bear the same name as his father. Id. at 382. The First District held that a parent's desire for a child to carry on a family name has no bearing on whether the child's best interests would be served by a name change nor are speculative arguments sufficient to establish that a name change is in a child's best interest. Id.

The Chamberlin court explained:

> When granting a petition to change the surname of a minor, a parent's conclusory assertions are insufficient to demonstrate that the change is in the best interest of the child. [Hutcheson v. Taylor, 43 So. 3d 921,] 922 [(Fla. 1st DCA 2010)]. Under the best interest standard, the record must affirmatively show that a name change is required for the welfare of the child. Collingworth v. O'Connell, 508 So. 2d 744, 747 (Fla. 1st DCA 1987) ("This standard, emphasizing best interest of the child rather than parents, would accord effect to the same factors governing custody."); Levine v. Best, 595 So. 2d 278 (Fla. 3d DCA 1992). None of the arguments presented to the trial court here support a finding that a name change would be in the minor child's best interest or required for his welfare. Rather, the arguments advanced by Mr. Miller to support the petition either have no bearing on a best interests analysis or have been previously rejected by this court.

Id. The Chamberlin court reversed the judgment granting a name change, holding that Mr. Miller failed to meet his burden of proof and the petition should not have been granted. Id.; see also Cothron, 769 So. 2d at 1148-49 (former wife's conclusory testimony in favor of petition for name change—that she wanted to protect her children

- 4 -

from embarrassment they might suffer due to father's status as convicted felon, and that an older child wanted no association with former husband's name—did not meet burden of proof; remanded for the taking of actual evidence and appointment of guardian ad litem for input relating to the children).

Here, the trial court made its finding after a full evidentiary hearing. We are well aware that the trial court is in the best position to assess witness credibility and weigh the evidence. Sinclair v. Sinclair, 804 So. 2d 589, 592 (Fla. 2d DCA 2002). However, our review compels the conclusion that the mother did not satisfy the demanding burden of proof described above. The trial court, therefore, had no basis on which to grant the petition; it abused its discretion in granting the requested relief. See McKay v. Haikey, 860 So. 2d 1046, 1049-50 (Fla. 5th DCA 2003). Much of the mother's testimony stressed pre-dissolution occurrences that had no bearing on the present petition and were resolved by the final judgment of dissolution and incorporated MSA. Furthermore, her assertions were conclusory, speculative, unsupported by competent and substantial evidence, and irrelevant to the best interest of or for the welfare of the child. Indeed, the mother's desire to change the daughter's name seems based solely on her wish to distance the child from the father and for the mother's own convenience. Such slight proof is not enough.

Under these circumstances, we must reverse. In doing so, we resist the urge to remand for a further hearing to fill the evidentiary gaps:

> [W]hen a cause is reversed for lack of evidence, a new trial cannot be awarded on the theory that some additional evidence *might have been available* at the former trial and will be presented on retrial, or that some such evidence *may*

*be found* and will be presented on retrial, and that in either
event there may be a different result upon the retrial.

Id. at 1050 (quoting Bardin v. State, Dep't of Revenue, 720 So. 2d 609, 613 (Fla. 1st
DCA 1998)).

We reverse the trial court's final judgment and remand with directions for
the trial court to enter an order that the child's surname be restored to that of the father.
See Chamberlin, 47 So. 3d at 382; Hutcheson, 43 So. 3d at 923; McKay, 860 So. 2d at
1050.

Reversed and remanded with directions.

WALLACE, J., Concurs.
CASANUEVA, J., Dissents with opinion.

CASANUEVA, Judge, Dissenting.

Because I conclude that the mother presented competent, substantial
evidence that her child's name change is in the child's best interest and the trial court
did not abuse its discretion in relying upon that evidence, I would affirm the final
judgment of change of name. Accordingly, I dissent.

Here, the mother sought to change the last name of the minor child to the
mother's restored maiden name, Conklin. The mother asserted that it was in the child's
best interest to bear the same last name as the mother, who had raised the child on her

own essentially since birth, rather than retaining the name of the absentee father. In support of this assertion, the mother testified that she is and always has been the child's sole caregiver, the father has no involvement in the child's life, and everyone in the child's family unit bears the last name Conklin.

The record reflects, at best, a minimal involvement by the father in the daughter's life since her birth. His initial lack of involvement could be attributed to his addiction problem and his efforts to confront the problem. The cause of subsequent disinterest is not readily identified, and the trial court was well within its authority to consider and weigh the evidence presented. The record reflects such evaluation.

Regarding the father's involvement in the child's life following the parties' separation, the mother testified that the father completed rehab for substance abuse and then left town without informing the mother. He later moved out of state, again without informing the mother. The last time the child saw her father was nineteen months prior to the hearing, when the child was two years old. The mother testified that the father does not correspond with the child, has never called her on her birthday or Christmas, and has never been to the child's preschool or attended her dance classes.

The mother stated that the daughter has no recollection of having a father and identifies with the mother as her family unit. In explaining why the change of name would be in her daughter's best interest, the mother stated that bearing the mother's last name would give the child a greater sense of stability and avoid feelings of embarrassment or abandonment for bearing the last name of the father, who has no meaningful presence in her life.

During his testimony, when asked to identify the parenting tasks he has performed since the divorce, the father responded by stating that he had paid a bill forwarded to him by the mother. Further, he acknowledged that he has had no influence in the life of his daughter. In describing the extent of his efforts to become involved in his child's life over the preceding two years, he responded that he had requested to see his daughter five times over the course of a week while he was in town.

The father does not provide the child with financial support. By agreement, his parents provide that financial assistance.

Unlike Wilson and Hutcheson, cited by the majority, it cannot be said that there is an absence of testimony in this case regarding why the name change is in the best interest of the child. Further, this case is easily distinguishable from Chamberlin and Hutcheson, wherein the petitions for name change were filed by fathers upon an establishment of paternity. In each case, the father alleged that the child's surname should be changed because the child, then only an infant, may someday experience negative feelings if the surname is not changed to that of the father. Chamberlin, 47 So. 3d at 382; Hutcheson, 43 So. 3d at 922-23.

By contrast, the child in this case is approaching school age, and the mother testified to the child's lack of connection with the father. Furthermore, the mother is intimately involved in the day-to-day life of the child and, pursuant to the MSA, was entrusted by the parties with full parental responsibility. Under these circumstances, and in light of the detailed testimony provided by the mother, I would conclude that it is neither speculative nor conclusory for the mother to assert that the

name change will result in greater stability for the child and avoid feelings of embarrassment and abandonment.

The majority asserts that the mother's petition for name change "seems based solely on her wish to distance the child from the father and for the mother's own convenience." While there may be an interpretation of the evidence that would support such a conclusion, clearly the trial court did not adopt such an interpretation. As the majority correctly notes, the trial court conducted a full evidentiary hearing, and it is the province of the trial court to assess the credibility of each witness and resolve conflicts in the evidence. See Siewert v. Casey, 80 So. 3d 1114, 1116 (Fla. 4th DCA 2012). Further, we are bound to interpret the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's conclusion. See Smith Barney Inc. v. Potter, 725 So. 2d 1223, 1224-25 (Fla. 4th DCA 1999).

Here, the mother testified that she did not object to the child spending time with the father, but the father had made no real effort to have a relationship with the child. The MSA provided the father with supervised visitation until the father completed drug rehab and met certain conditions of sobriety. The mother testified that at the time of the MSA, she did not anticipate that the father would have such minimal contact with the child, seeing her only two or three times over a two-year period. While he alleged at trial that his lack of involvement in the child's life was due to the mother's interference, the mother presented testimony to the contrary. The father never complained about or sought additional parenting time until after the initial hearing on the name-change petition. The trial court could well conclude on this record that the father was more concerned about maintaining the child's surname than maintaining a relationship with

the child. Again, it is the province of the trial court to resolve conflicts in evidence, and it found the mother to be credible.

The mother testified that the father has no meaningful involvement in the child's life; that the child identifies only with the mother, her sole caregiver; and that the name change would provide the child greater stability and avoid feelings of embarrassment and abandonment. I find that these are valid considerations for determining whether the name change is in the best interest of the child. See Coolidge, 733 So. 2d at 1093-94 (considering the level of continued parental involvement and relationship with the child); Collinsworth, 508 So. 2d at 747 (stating that the standard for changing the name of a minor child, "emphasizing best interests of the child rather than parents, would accord effect to the same factors governing custody"). Finally, I would note that nothing in the trial court's judgment reduces or alters the father's visitation rights.

When measuring the facts against the abuse of discretion standard of review, I conclude that the trial court did not err in granting the name change because it is in the child's best interest. Accordingly, I would affirm the final judgment.